

## Parker Poe

**Michael A. Goldsticker**
t: 919.835.4624
f: 919.834.4564
michaelgoldsticker@parkerpoe.com

Atlanta, GA
Charleston, SC
Charlotte, NC
Columbia, SC
Greenville, SC
Raleigh, NC
Spartanburg, SC
Washington, DC

July 26, 2024

**Via U.S. Mail**

Clerk, Northern District of Texas
Fort Worth Division
501 West 10th Street, Room 310
Fort Worth, Texas 76102-3673

> **RECEIVED**
> *By WendyCamargo at 2:53 pm, Aug 07, 2024*

> Re:  *Kelly Pinn, et al. v. Better Tax Relief LLC*
> **(Case No. 4:24-cv-00488)**

Dear Clerk:

Pursuant to the Judicial Panel on Multidistrict Litigation Rule 4.1(b), enclosed please find a copy of the **Motion Of Defendants For Transfer Of Actions to the Western District of Texas Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings** (ECF1) with Supporting Brief, Schedule of Actions, Proof of Service and Exhibits A-E filed with the JPML on July 26, 2024 for filing in this district where an affected action is currently pending.

Thank you for your assistance in this manner.  If you have any questions, please do not hesitate to contact me.

Sincerely,

*Michael Goldsticker*

Michael A. Goldsticker

Enclosure(s)

PPAB 11275357v1

Parker Poe Adams & Bernstein LLP   PNC Plaza   301 Fayetteville Street   Suite 1400   Raleigh, NC   27602-0389
t 919.828.0564   f 919.834.4564   www.parkerpoe.com

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| | MDL Case No. _____ |
| **IN RE RANGE VIEW ET AL TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | **MOTION OF DEFENDANTS FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS** |

Defendants Range View Management LLC ("Range View"), Better Debt Solutions LLC ("BDS"), Lendvia LLC ("Lendvia"), and Better Tax Relief LLC ("BTR") (collectively, "Defendants"), by and through the undersigned counsel, respectfully move the Judicial Panel of Multidistrict Litigation (the "Panel"), pursuant to 28 U.S.C. § 1407, for an Order to transfer and consolidate to the Federal District Court for the Western District of Texas the five cases (the "Pending Actions") identified below and in the Schedule of Actions.

As set forth below and in the accompanying memorandum, the coordination or consolidation of the Pending Actions is appropriate because (1) the Pending Actions each involve one or more common questions of fact; (2) consolidation or coordination will serve greatly to the convenience of the parties, their counsel, and the judiciary and the efficient resolution of the lawsuits; and (3) consolidation or coordination will promote the just and efficient conduct of the Pending Actions and avoid the risk of inconsistent pre-trial decisions, including class certification decisions pursuant to Fed. R. Civ. P. 23. In support of its motion, Defendants further aver as follows:

1. The Pending Actions all allege that one or more of the Defendants violated the Telephone Consumer Protection Act ("TCPA") by allegedly placing calls to telephone numbers

registered on the National Do-Not Call Registry ("National DNC") via pre-recorded or artificial voice machines for the purposes of soliciting certain financial services or products.

2.      Three of the five Pending Actions are putative class actions with nearly identical class definitions. For example, *Collins et al. v. Better Tax Relief LLC*, *Rapp et al. v. Range View Management LLC et al.*, and *Pinn et al. v. Better Tax Relief, LLC* each allege nationwide classes comprised of any person in the United States that received a call from one or more Defendants for the purposes of soliciting Defendants' goods or services in the past four years. *Collins* and *Rapp*, specifically, provide nearly identical class definitions: (1) "All persons within the United States," (2) registered on the [National DNC] for at least 31 days," (3) that received two or more calls from Defendants and/or a third party acting on Defendants' behalf, (4) for purposes of "promoting Defendants' products or services," (5) "within any twelve-month period," and (6) "within the four (4) years prior to the filing of the Complaint."

3.      *Collins* and *Pinn* also allege statewide putative classes under the Florida Telephone Consumer Protection Act and the Texas Business and Commerce Code, respectively. The scope of the respective state putative classes is virtually identical to the nationwide TCPA classes.

4.      Two other actions, *Herrera v. Lenvia LLC* and *Silva v. Lendvia LLC*, also seek individual relief and assert claims under the TCPA that are entirely subsumed by the TCPA classes in *Collins*, *Rapp*, and *Pinn*. Additionally, *Herrera* and *Silva* both assert claims under the Texas Business and Commerce Code that are entirely subsumed by the statewide class in the *Pinn* action.

5.      *Collins* and *Rapp* were filed on June 11, 2024 and June 28, 2024, respectively, in the United States District Court for the Central District of California. *Pinn* was filed on May 27, 2024 in the United States District Court for the Northern District of Texas. *Silva* and *Herrera* were filed on May 3, 2024 and June 20, 2024, respectively, in the United States District Court for the Western District of Texas.

6.      Transfer and consolidation of the Pending Actions in the Western District of Texas will ensure the just and efficient conduct of litigation and is necessary to avoid inconsistent pretrial decisions, overlapping class determinations, and duplicative discovery.

7.      Indeed, all five cases will involve the same written discovery, relevant documents, and largely overlapping witnesses.

8.      Since the *Collins*, *Rapp*, and *Pinn* plaintiffs will pursue class certification for nationwide TCPA classes, consolidation of the Pending Actions is necessary to develop consistent law of the case and aid in the potential resolution of these actions.

9.      The Western District of Texas is the appropriate court to oversee the Pending Actions and will provide tremendous efficiency and cost savings to the respective parties. A substantial number of the factual allegations, documents, and witnesses reside or arise out of Texas. Upon information and belief, three of the named plaintiffs currently reside in Texas. Specifically, the two plaintiffs in *Herrera* and *Silva* reside in the Western District. The remaining plaintiffs reside in Pennsylvania, Florida, Indiana, and North Dakota. Upon information and belief, not a single plaintiff resides in California, including the plaintiffs for the actions filed in the Central District of California, and will therefore not be prejudiced by having their actions consolidated in the Western District of Texas for pretrial proceedings.

10.      Finally, the early transfer and consolidation of the Pending Actions will avoid repetitive motion practice and will significantly lessen the burden placed on the district courts and the parties.

WHEREFORE, Defendants respectfully request that the Judicial Panel on Multidistrict Litigation grant Defendants' motion and transfer the Pending Actions to the United States District Court for the Western District of Texas for coordinate or consolidated pretrial proceedings.

Dated: July 26, 2024

Respectfully submitted,

*/s/* Michael A. Goldsticker

Michael A. Goldsticker
N.C. State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (27602-0389)
Raleigh, North Carolina 27601
Telephone:     (919) 828-0564
Facsimile:      (919) 834-4564
Email:          michaelgoldsticker@parkerpoe.com

Brent R. Phillips
PHILLIPS LAW CORPORATION
801 Parkcenter Drive, Suite 105
Santa Ana, CA 92705
Tel: (714) 573-4087
Fax: (714) 586-5499
E-mail: bphillips@phillipslawcorporation.com

*Attorneys for Defendant Range View Management,
LLC; Lendvia LLC; Better Debt Solutions LLC; and
Better Tax Relief LLC*

4

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | MDL Case No. \_\_\_\_\_ |
| IN RE RANGE VIEW ET AL TELEPHONE CONSUMER PROTECTION ACT LITIGATION | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RANGE VIEW MANAGEMENT'S MOTION TO TRANSFER AND CONSOLIDATE FOR PRETRIAL PROCEEDINGS |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to 28 U.S.C. § 1407, Range View Management LLC ("Range View"), Better Debt Solutions LLC ("BDS"), Lendvia LLC ("Lendvia"), and Better Tax Relief LLC ("BTR") (collectively, "Defendants"), by and through the undersigned counsel, move to transfer and consolidate to the Federal District Court for the Western District of Texas five cases (the "Pending Actions"). Three of the cases are class action cases, which each assert claims under the federal Telephone Consumer Protection Act ("TCPA") on behalf of a nationwide class. Two of the class actions also assert claims under analogous state laws on behalf of statewide classes, in addition to a nationwide TCPA class.

Section 1407 provides for the transfer and consolidation of pending civil actions for pretrial proceedings to multidistrict litigation proceedings when (1) there is one or more common questions of fact between civil actions pending in different districts; (2) the transfer will be for the convenience of the parties and witnesses; and, (3) the transfer will promote the just and efficient conduct of the actions to be consolidated. 28 U.S.C. § 1407(a). These factors are satisfied here.

First, there are multiple common questions of fact among the Pending Actions.[1] As reflected in the complaints, attached hereto as exhibits, each of the Pending Actions is virtually

---

[1] Defendants expressly reserve, and in no way waive, any argument with respect to whether common questions of fact predominate across the putative class actions for purposes of class certification. Defendants assert only that common factual and legal contentions reciprocate across the Pending Actions such that consolidation under 28 U.S.C. § 1407 is appropriate. *See also In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973) ("The criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from

identical. Each Pending Action asserts causes of action for Defendants' alleged violations of the TCPA, 47 U.S.C. § 227, and are based on almost the same factual allegations.

Second, transfer and consolidation under Section 1407 of the Pending Actions serves the convenience of the parties and witnesses in that it will facilitate the efficient conduct of common discovery. The discovery in the Pending Actions will be identical because each of the Pending Actions alleges the same or substantially similar causes of action for violations of the TCPA based on the same factual allegations, including that the individual plaintiffs registered their personal cellular devices on National Do-Not Call Registry ("National DNC") and received one or more calls, emails, and/or texts from Defendants purporting to provide debt relief services. Transfer and consolidation will eliminate duplicative discovery, prevent inconsistent pretrial discovery rulings and conserve the resources of the parties, their counsel, and the judiciary during the discovery process.

Third, transfer and consolidation to the Western District of Texas serves the convenience of the parties and witnesses. Much of the alleged underlying claims arose in Texas. Indeed, many of the named Defendants conduct business in Texas, and many of the witnesses relevant to the underlying claims are located in the Western Division. Potentially relevant documents originate from or are maintained in Texas. And three of the five cases assert claims under both the TCPA and the Texas Business and Commerce Code ("TB&CC")—including one case that purports to represent a nationwide TCPA class and statewide TB&CC class. Moreover, two of the five Pending Actions are currently pending in the Western Division, four of the seven named plaintiffs currently reside in Texas, and two of the seven named plaintiffs specifically reside in the Western Division.

Fourth, transfer and consolidation will promote the just and efficient conduct of the Pending Actions due to the high risk of conflicting and inconsistent rulings by multiple courts on the same issues. To begin with, three of the cases are class action cases that seek to represent nationwide classes for claims under the TCPA. Of these three cases, two of them also seek to

the criteria for transfer pursuant to 28 U.S.C. § 1407.").

2

represent statewide classes under analogous state laws, including the TB&CC and Florida Telephone Solicitation Act ("FTSA"). There is the risk of conflicting and inconsistent class determinations under Rule 23 by courts in different jurisdictions. The Judicial Panel has stated that multiple class action cases under Rule 23 are ideal, if not compulsory, candidates for transfer and consolidation under Section 1407 due to the risk of inconsistent class determinations by different courts. *See, e.g., In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists."). Moreover, the outcome of the parties' dispositive motions should be consistent in light of the overlapping facts and law upon which the Pending Actions are based. Given the commonality of facts and underling law across the Pending Actions, there is the risk of inconsistent and conflicting rulings on dispositive motions if the Pending Actions were to proceed separately for pretrial purposes.

Because the Pending Actions involve common questions of fact and transfer and consolidation will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the Pending Actions, Defendants' Motion to Transfer and Consolidate the Pending Actions to the United States District Court for the Western District of Texas should be GRANTED.

## II. FACTUAL BACKGROUND

**A.** **Defendants**

Defendants are limited liability companies organized under the laws of California or Wyoming and that routinely conduct business in Texas and many other states across the country. Defendants offer debt-related services to the public through websites and other mediums. Defendants provide an array of financial services, including but not limited to debt consolidation services and loans, debt relief, debt settlement, debt negotiation, bankruptcy services, and credit assistance services. Potential customers that are interested in receiving certain financial services, including debt consolidation or settlement, routinely access Defendants' respective websites to begin applying for the applicable and desired services.

B.      **The Pending Actions**

Between May 3, 2024 and July 10, 2024, the five Pending Actions were filed against Defendants, as identified below:

1) *Richard Collins et al. v. Better Debt Solutions LLC et al.,* Case No. 8:24-cv-01263 (C.D. Cal. June 11, 2024) (hereinafter, the *"Collins* Action") (attached hereto as **Exhibit A**);

2) *Aaron Rapp et al. v. Range View Management LLC & Better Debt Solutions LLC*, Case No. 8:24-cv-01438 (C.D. Cal. June 28, 2024) (hereinafter, the *"Rapp* Action") (attached hereto as **Exhibit B**);

3) *Kelly Pinn et al. v. Better Tax Relief LLC*, Case No. 4:24-cv-00488 (N.D. Tex. May 27, 2024) (hereinafter, the *"Pinn* Action") (attached hereto as **Exhibit C**);

4) *Barbara Silva v. Lendvia LLC*, Case No. 3:24-cv-00155 (W.D. Tex. May 3, 2024) (hereinafter, the *"Silva* Action") (attached hereto as **Exhibit D**); and

5) *Nubia Herrera v. Lendvia LLC*, Case No. 3:24-cv-00215 (W.D. Tex. June 20, 2024) (hereinafter, the *"Herrera* Action") (attached hereto as **Exhibit E**); [2]

Each of the Pending Actions alleges violations of the TCPA, 47 U.S.C. § 227. Specifically, each action alleges that Defendants used pre-recorded and/or artificial voice machines and that Defendants allegedly called plaintiffs' cell phone numbers that were allegedly registered on the National DNC. Three of the Pending Actions—namely the *Collins*, *Rapp*, and *Pinn* Actions—are putative class action lawsuits that each seek to represent an virtually identical nationwide TCPA class. In fact, these three class action complaints provide virtually identical proposed class definitions, including for "all persons within the United States" that were (1) registered on the National DNC and (2) were contacted two or more times by Defendants within the preceding four years without prior consent. (*See* Exhibit C at ¶ 39; Exhibit A at ¶ 171; Exhibit B at ¶ 63).

---

[2] Not included in this list is *Leslie Seely v. Lendvia LLC*, Case No. 248200234170 (Justice Ct., Harris Cty, Tex.), which was filed in the Harris County, Texas Justice Court against Defendant Lendvia. Like the Pending Actions, the *Seely* Action asserts claims under the TCPA for alleged violations of 42 U.S.C. § 227 *et seq.* Because the complaint seeks damages and cost pursuant to federal law, namely the TCPA, Defendants are in the process of removing the case to federal court. Upon removal, and if this Panel grants consolidation of the Pending Actions, Defendants intend to have the *Seely* Action transferred to the MDL. The plaintiff in *Seely* is a Texas resident.

Moreover, the *Pinn* Action and *Collins* Action also assert class action claims under respective state laws in addition to TCPA claims. The *Pinn* Action asserts claims under the TB&CC for "[a]ll persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendant, (2) at any time during which Defendant was not registered as a telephone solicitor with the Texas Secretary of State, [and] (3) at any time in the period that begins four years before the date of filing this Complaint to trial." (Exhibit C at ¶ 39). The *Collins* Action asserts claims under the FTSA for "[a]ll persons within the State of Florida who received any solicitation/telemarketing phone calls or texts messages from Defendants . . . within the four years prior to the filing of th[e] Complaint." (Exhibit A at ¶ 172).

The other two Pending Actions—the *Herrera* and *Silva* Actions—also each seek individual relief under the TCPA. Each of these cases assert claims against the same or similar Defendants for alleged TCPA violations, including via the alleged use of "spoofing," the use of artificial or automated voice recordings and messages, and the knowing and willful calling of plaintiffs' numbers allegedly registered on the National DNC without prior written consent. As such, these claims are entirely subsumed by the nationwide putative classes identified in the *Collins* Action, *Rapp* Action, and *Pinn* Action. The *Herrera* Action and *Silva* Action also assert claims under the Texas Business and Commerce Code §§ 302.101, 305.053, which are entirely subsumed by the statewide TB&CC class sought by the *Pinn* Action.

In short, the complaints make virtually identical allegations that Defendants violated the TCPA's restrictions on telemarketing business solicitations in the following ways: (1) by using an automatic telephone dialing system to initiate a call to plaintiffs' cellular phones; (2) by calling plaintiffs when plaintiffs' phone numbers were allegedly registered on the National DNC maintained by the Federal Trade Commission; (3) by initiating a telephone call(s) to plaintiffs using an artificial or prerecorded voice to deliver a message; (4) that Defendants did not have plaintiffs' prior written consent to make the call(s) or have an established business relationship with plaintiffs; and (5) that Defendants' alleged violations of the TCPA were knowing and willful.

### III. ARGUMENT AND AUTHORITIES

**A.      Standard For Consolidation And Transfer**

Pursuant to 28 U.S.C. § 1407, pending civil actions may be transferred to and consolidated for pretrial proceedings to Multidistrict Litigation proceedings when (1) there is one or more common questions of fact between civil actions pending in different districts; (2) the transfer will be for the convenience of the parties and witnesses; and, (3) the transfer will promote the just and efficient conduct of the actions to be consolidated. *See* 28 U.S.C. § 1407(a); *see also In re Asbestos Prod. Liability. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991); *In re Griseofulvin Antitrust Litig.*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

**1.      The Pending Actions Raise The Exact Same Questions Of Fact**

The Pending Actions against Defendants are virtually identical.[3]  Each of the complaints alleges one or more causes of action for violations of the TCPA or causes of action arising from the same theories of liability and conduct.  The cases raise the exact same questions of fact and law of whether Defendants violated the TCPA when they allegedly called plaintiffs. *See, e.g., In re Wireless Tel. Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting motion to transfer and consolidate where the underlying cases involved "nearly identical allegations" relating to wireless telephone replacement protection programs). These common questions include: (1) Whether Defendants used an automatic telephone dialing system to initiate a call to plaintiffs' cellular phone; (2) Whether Defendants called plaintiffs when their phone numbers were on the National DNC; (3) Whether Defendants knew or should have known that plaintiffs' phone numbers were listed on the National DNC; (4) Whether Defendants initiated a telephone call to plaintiffs using an artificial or prerecorded voice to deliver a message; (5)

---

[3]Counsel for two of the class action cases appear to have filed almost identical complaints. For example, the *Collins* Action and *Rapp* Action were both prepared and filed roughly two weeks apart in the Central District of California by the law firm of Kazerouni Law Group, APC. The respective complaints include virtually the same—and, in some instances, identical—allegations and factual or legal recitations.

Whether or not Defendants had plaintiffs' prior written consent to make the calls or had an established business relationship with plaintiffs; and (6) Whether Defendants' alleged violations of the TCPA were knowing and willful.[4]

> **2. Transfer And Consolidation of The Pending Actions In The United States District Court For The Western District of Texas Will Serve The Convenience of The Parties And Witnesses**
>
> > **a. Transfer And Consolidation Will Serve The Convenience of The Parties And Witnesses By Facilitating The Efficient Conduct of Discovery**

The primary factor when determining whether transfer and consolidation under Section 1407 will serve the convenience of the parties and witnesses is whether such transfer and consolidation is necessary to facilitate the efficient conduct of common discovery. *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1360 (J.P.M.L. 2017); *In re: Wright Medical Tech. Inc. v. Conserve Hip Implant Products Liability Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012) (noting that transfer is warranted where centralization of discovery will eliminate duplicative discovery and prevent inconsistent pretrial rulings on discovery); *In re Tri-State Water Rights. Litig.*, 481 F.Supp.2d 1351, 1352 (J.P.M.L. 2007). The Judicial Panel has consistently emphasized the need for centralization to eliminate duplicative discovery and prevent inconsistent pretrial discovery rulings in order to conserve the resources of the parties, their counsel, and the judiciary. *In re: TLI Commc'ns LLC Pat. Litig.*, 26 F. Supp. 3d 1396, 1397 (J.P.M.L. 2014); *In re: £Maxim Integrated Prod., Inc., Pat. Litig.*, 867 F. Supp. 2d 1333, 1334–35 (J.P.M.L. 2012).

Here, there is no question that transfer and consolidation under Section 1407 of the Pending Actions will facilitate the efficient conduct of common discovery. The Pending Actions share common issues of fact regarding Defendants alleged telephone solicitation and will involve the exact same factual discovery. Indeed, discovery for each of the Pending Actions will entail the

---

[4]Though four cases also assert state law claims in addition to TCPA claims—i.e., *Collins* Action (Florida Telephone Solicitaiton Act), *Pinn* Action (Texas Business & Commerce Code), *Herrera* Action (Texas Business & Commerce Code), and *Silva* Action (Texas Business & Commerce Code)—those causes of action are based entirely on the same alleged conduct giving rise to plaintiffs' TCPA claims.

same or substantially similar types of documents, including call logs, Defendants' policies or procedures regarding National DNC, and agreements regarding plaintiffs' consent to be contacted, among other materials. Moreover, the Pending Actions identify the same or substantially similar Defendants and therefore will necessarily involve depositions of the same witnesses and the same written discovery. *See In re Ortho Evra Prods. Liab. Litig.*, 422 F. Supp. 2d 1379, 1381 (J.P.M.L. 2006) (noting that transfer and coordination with largely avoid duplicating written discovery and depositions, which will conserve the parties' and their counsels' resources). For example, the three of the Pending Actions assert claims against Defendant Lendvia, including the *Collins* Action (C.D. California), the *Herrera* Action (W.D. Texas), and the *Silva* Action (W.D. Texas). Likewise, two of the Pending Actions assert claims against Defendant BDS, including the *Collins* Action (C.D. California) and the *Rapp* Action (C.D. California).

Finally, consolidation will conserve the resources of the parties, their counsel, and the judiciary. Defendants are collectively represented by the same counsel. Plaintiffs in the *Collins* Action and *Rapp* Action are represented by the same counsel. Both cases purport to represent nationwide TCPA classes, which would subsume the *pro se* claims asserted in the *Herrera* Action and *Silva* Action. Similarly, while plaintiffs in the *Pinn* Action are represented by counsel from Pennsylvania, their claims under the TCPA, including for a nationwide class, similarly overlap with the *Collins* Action and *Rapp* Action. As such, it will be a waste of the parties' and judiciary's resources to litigate virtually identical cases in various states and federal district courts.

As such, the transfer and consolidation of the Pending Actions will eliminate duplicative discovery and instead facilitate common discovery.

### 2. Transfer And Consolidation Serves The Convenience of The Parties And Witnesses Because The Relevant Documents And Witnesses Are Located In The Western District of Texas

The Judicial Panel also considers where the underlying claims arose, where relevant documents are located, and where the majority of the witnesses relevant to the underlying claims are located to determine if pending cases should be consolidated and transferred to a particular federal district court. *See, e.g., In re Novartis Wage and Hour Litig.*, 460 F. Supp. 2d 1382–83

(J.P.M.L. 2006); *In re Am. Online, Inc.*, 162 F. Supp. 2d 960, 691 (J.P.M.L. 2001). Transfer and consolidation under Section 1407 to the district where the claims arose and relevant documents and witnesses are located best serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation. *Id.*

Here, the Pending Actions should be consolidated and transferred to the Western District of Texas for the convenience of the parties and witnesses and to promote the just and efficient conduct of the ligation for multiple reasons. First, two of the Pending Actions were filed in the Western District of Texas. Second, three of the Pending Actions assert claims under the Texas Business & Commerce Code, including the *Pinn* Action, the *Herrera* Action, and the *Silva* Action. Third, the *Pinn* Action, which was filed in the nearby Northern District of Texas, seeks both a nationwide TCPA class and a Texas Business and Commerce Code class. Fourth, a substantial number of witnesses reside in or within close proximity to the Western District of Texas, including three named plaintiffs. Fifth, Defendants BDS, Lendvia, and BTR routinely conduct business in Texas, including the Western District of Texas.[5]

Moreover, transfer and consolidation in the Western District of Texas imposes no burden on plaintiffs located outside the state of Texas because "a Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F.Supp. 504, 506 (J.P.M.L. 1976). Moreover, not a single plaintiff resides in California despite two of the Pending Actions, *i.e.* the *Collins* Action and *Rapp* Action, having been filed in the Central District of California. For instance, the named plaintiffs in the *Collins* Action reside in Pennsylvania, North Dakota, and Florida. The named plaintiff in the *Rapp* Action resides in Indiana. As such, the three named plaintiffs that reside in Texas will benefit from consolidation and the plaintiffs residing in other states will bear no additional burden in traveling to Texas as opposed to California where their claims were originally filed. Indeed, the different states in which

---

[5] Defendants also note that the United States District Court for the Western District of Texas has presided over a number of multidistrict litigations and is therefore fully capable of overseeing pretrial proceedings for the Pending Actions. *See, e.g., In re Whole Foods Market, Inc., Greek Yogurt Manufacturing & Sales Practices Litigation*, Case No. 1:14-MC-02588-SS (W.D. Tex. Dec. 12, 2014).

9

the numerous plaintiffs reside furthers shows the need for consolidated proceedings within a single district.

> **3. Transfer And Consolidation Will Promote The Just And Efficient Conduct Of The Pending Actions Due To The Risk Of Conflicting And Inconsistent Ruling By Multiple Courts**

The Judicial Panel has consistently found that transfer and consolidation under Section 1407 will promote the just and efficient conduct of related actions where there is a risk of conflicting and inconsistent ruling by multiple courts on the same issues. *In re Butterfield Pat. Infringement*, 328 F. Supp. 513, 514–515 (J.P.M.L. 1970); *In re Fourth Class Postage Reguls.*, 298 F. Supp. 1326, 1327 (J.P.M.L. 1969); *In re Concrete Pipe*, 302 F. Supp. 244, 255–56 (J.P.M.L. 1969). This consideration has been recognized as a basis for ordering cases to be transferred under 28 U.S.C. § 1404(a) to avoid the risk of injury to the parties by consistent judicial treatment. *In re Butterfield*, 328 F. Supp. at 514–15; *In re Fourth Class Postage*, 298 F. Supp. at 1327.

> **a. Congress and The Judicial Panel Have Recognized Class Action Cases as Appropriate and Necessary for Transfer Due to The Risk of Inconsistent and Conflicting Class Determinations**

Congress, when enacting 28 U.S.C. § 1407, identified class action cases as those cases particularly appropriate for transfer and consolidation for multidistrict litigation proceedings. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968). The Judicial Panel has consistently recognized that the transfer of class actions under Section 1407 is appropriate and often necessary due to the high likelihood of conflicting and inconsistent class determinations under Rule 23 by courts in different jurisdictions. *See, e.g., In re Charlotte Russe, Inc.*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) (noting that centralization is appropriate "especially with respect to class certification" issues and to "prevent inconsistent pretrial rulings"); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (granting motion to consolidate in order to "prevent inconsistent pretrial rulings (especially with respect to class certifications and summary judgments)."). Indeed, as stated by the Judicial Panel, class action cases under Federal Rule 23 present "highly persuasive if not compelling

reason[s] for transfer of all actions to a single judge." *In re Natural Resources Fund*, 372 F. Supp. at 1404 (granting consolidation); *see also In re Equity Funding Corp.*, 375 F. Supp. at 1385–86 (holding that the transfer and consolidation of class action cases is appropriate, if not necessary, due to the possibility of conflicting and inconsistent class determinations).

Three of the Pending Actions here contain Rule 23 class allegations based upon identical or virtually identical alleged violations of the TCPA and preliminarily define the putative classes as covering "all persons in the United States" that (1) were registered on the National DNC and (2) received at least two unsolicited calls from one or more Defendants in the preceding four years. The potential for inconsistent or conflicting class determinations is readily apparent, particularly in cases such as these where multiple class actions purport to represent the same nationwide classes and include potentially thousands, if not hundreds of thousands, of prospective plaintiffs. These conflicts include conflicting or inconsistent rulings on class issues and defenses, the class claims, the scope of the respective classes, whether there is one or multiple classes, the respective parties in the class, and the class allegations. Moreover, if consolidation were not granted, Defendants would be acutely impacted by proceeding in multiple nationwide class actions that largely reflect the same class definitions, potential plaintiffs, and claims. The transferee judge, with all of the claims and parties before the court, will have a clear picture of the scope and complexity of the litigation, which is essential to making fair and balanced class determinations.

Finally, a central court overseeing the TCPA class allegations would be sufficiently informed to construct or define state-specific classes in accordance with Florida and Texas law, and consolidation would not prejudice those plaintiffs asserting state claims. *See In re Delphi Corp. Sec., Derivative, and "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (noting that transfer under Section 1407 "has the salutary effect of fostering a pretrial program that allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues."). Accordingly, the Pending Actions should be transferred and consolidated to a single judge to avoid the risk of and prejudice associated with conflicting class determinations.

**b.    There Is a Risk Of Inconsistent and/or Conflicting Rulings On Motions For Summary Judgment**

It is well-settled that "pretrial proceedings" for cases transferred and consolidated under Section 1407 potentially encompass dispositive motions, including motions for summary judgment. *In re Butterfield Pat. Infringement*, 328 F. Supp. 513, 514–15 (J.P.M.L. 1970); David F. Herr, Multidistrict Litigation Manual § 9:20 n.4 (2014) (citing cases). The Judicial Panel has recognized that the risk of inconsistent rulings on summary judgment motions by multiple courts is a compelling factor in favor of transfer and consolidation. *In re Butterfield*, 328 F. Supp. at 514.

Here, Defendants intend to move for summary judgment, in whole or in part, on plaintiffs' causes of action for violations of the TCPA and analogous state laws. Plaintiffs may also move for summary judgment or partial summary judgment on their claims or one or more of the defenses raised by Defendants. The outcome of the parties' motions should be consistent given that all the Pending Actions are based on the same or substantially similar alleged conduct, including purported violations of the TCPA. Litigating these anticipated dispositive motions across various courts presents a real but entirely avoidable possibility of different holdings or, at the least, different factual determinations despite the common factual and legal nucleus in the Pending Actions. If the Pending Actions are consolidated before the Western District of Texas, any ruling on the parties' respective dispositive motions, including summary judgment motions, would be the same for all parties. Accordingly, consolidation and transfer is appropriate to avoid injury to the parties resulting from inconsistent judicial treatment of dispositive motions. *In re Butterfield*, 328 F. Supp. at 514.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Judicial Panel grant Defendants' Motion to Transfer and Consolidate for Pretrial and transfer and consolidate the Pending Actions listed on the Schedule of Actions filed herewith to the United States District Court for the Western District of Texas.

Dated: July 26, 2024

Respectfully submitted,

/s/ Michael A. Goldsticker
Michael A. Goldsticker
N.C. State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (27602-0389)
Raleigh, North Carolina 27601
Telephone:        (919) 828-0564
Facsimile:        (919) 834-4564
Email:            michaelgoldsticker@parkerpoe.com

Brent R. Phillips
PHILLIPS LAW CORPORATION
801 Parkcenter Drive, Suite 105
Santa Ana, CA 92705
Tel: (714) 573-4087
Fax: (714) 586-5499
E-mail: bphillips@phillipslawcorporation.com

*Attorneys for Defendant Range View Management,
LLC; Lendvia LLC; Better Debt Solutions LLC; and
Better Tax Relief LLC*

# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE RANGE VIEW ET AL TELEPHONE CONSUMER PROTECTION ACT LITIGATION | MDL Case No. _____ |

## SCHEDULE OF ACTIONS

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:** Richard Collins, Bonnie Joe, and Maxx Lyman, individually and on behalf of all other similarly situated<br><br>**Defendants:** Better Debt Solutions LLC and Lendvia LLC | Central District of California, Southern Division - Santa Ana | 8:24-cv-01263 | Fred W. Slaughter |
| **Plaintiff:** Aaron Rapp, individually and on behalf of All others similarly situated<br><br>**Defendants:** Range View Management, LLC and Better Debt Solutions, LLC | Central District of California, Southern Division - Santa Ana | 8:24-cv-01438-JWH-KES | John W. Holcomb |
| **Plaintiff:** Kelly Pinn, individually and on behalf of all others similarly situated<br><br>**Defendant:** Better Tax Relief, LLC | Northern District of Texas, Fort Worth Division | 4:24-cv-00488-P | Mark Pittman |

| **Plaintiff:** Barbara Silva<br><br>**Defendant:** Lendvia LLC, a California Limited Liability Company | Western District of Texas,<br>El Paso Division | 3:24-cv-00155-KC | Kathleen Cardone |
|---|---|---|---|
| **Plaintiff:** Nubia Herrera<br><br>**Defendant:** Lendvia LLC, a California Limited Liability Company | Western District of Texas,<br>El Paso Division | 3:24-cv-00215-LS | Leon Schydlower |

Dated: July 26, 2024.

Respectfully submitted,

/s/ Michael A. Goldsticker
Michael A. Goldsticker
N.C. State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (27602-0389)
Raleigh, North Carolina 27601
Telephone:     (919) 828-0564
Facsimile:      (919) 834-4564
Email:           michaelgoldsticker@parkerpoe.com

Brent R. Phillips
PHILLIPS LAW CORPORATION
801 Parkcenter Drive, Suite 105
Santa Ana, CA 92705
Tel: (714) 573-4087
Fax: (714) 586-5499
E-mail: bphillips@phillipslawcorporation.com

*Attorneys for Defendant Range View Management, LLC; Lendvia LLC; Better Debt Solutions LLC; and Better Tax Relief LLC*

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE RANGE VIEW ET AL TELEPHONE CONSUMER PROTECTION ACT LITIGATION | MDL Case No. _____ |

**PROOF OF SERVICE**

I, Michael A. Goldsticker, hereby certify that a copy of the foregoing Motion, Brief,

Schedule of Actions and this Certificate of Service was served by United States Mail on July 26

2024, upon the following:

Clerk, Central District of California
Southern Division
411 West 4th Street, Room 1053
Santa Ana, CA 92701-4516

Clerk, Northern District of Texas
Fort Worth Division
501 West 10th Street, Room 310
Fort Worth, Texas 76102-3673

Clerk, Western District of Texas
El Paso Division
525 Magoffin Avenue, Suite 105
El Paso, Texas 79901

David J. McGlothlin, Esq.
Mona Amini, Esq.
Gustavo Ponce, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
david@kazlg.com
mona@kazlg.com
gustavo@kazlg.com
    **Counsel for Plaintiffs Richard Collins, Bonnie Joe, Maxx Lyman, and Proposed
    Class**
    C.D. California, No. 8:24-01263

1

Brent R. Phillips, Esq.
Phillips Law Corporation
801 Parkcenter Drive, Suite 105
Santa Ana, California 92705
bphillips@phillipslawcorporation.com
      **Counsel for Defendants Better Debt Solutions, LLC and Lendvia, LLC**
      C.D. California, No. 8:24-01263

Abbas Kazerounian, Esq.
David J. McGlothlin, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
ak@kazlg.com
david@kazlg.com
      **Counsel for Plaintiff Aaron Rapp and Proposed Class**
      C.D. California, No. 8:24-01438

Brent R. Phillips, Esq.
Phillips Law Corporation
801 Parkcenter Drive, Suite 105
Santa Ana, California 92705
bphillips@phillipslawcorporation.com
      **Counsel for Defendants Range View Management, LLC and Better Debt Solutions LLC**
      C.D. California, No. 8:24-01438

Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Caramel Avenue
Glenside, Pennsylvania 19038
a@perronglaw.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Sharon K. Campbell
Law Office of Sharon K. Campbell
3500 Oak Lawn Ave., Suite 110
Dallas, Texas 75219
sharon@sharonkcampbell.com
      **Counsel for Plaintiff Kelly Pinn and Proposed Class**
      N.D. Texas, No. 4:24-00488

Brent R. Phillips, Esq.
Phillips Law Corporation
801 Parkcenter Drive, Suite 105
Santa Ana, California 92705
bphillips@phillipslawcorporation.com
    **Counsel for Defendant Better Tax Relief LLC**
    N.D. Texas, No. 4:24-00488

Barbara Silva
8749 Coloma Circle
El Paso, Texas 79907
Bbrios259@gmail.com
    **Pro Se Plaintiff**
    W.D. Texas, No. 3:24-00155

Steven Albert Costello
Silberman Law Firm PLLC
7 West Way Court, Suite B
Lake Jackson, Texas 77566
scostello@silblawfirm.com
    **Counsel for Defendant Lendvia, LLC**
    W.D. Texas, No. 3:24-00155

Nubia Herrera
7519 N Loop Drive
El Paso, Texas 79915
Nubia88.nh@gmail.com
    **Pro Se Plaintiff**
    W.D. Texas, No. 3:24-00215

Dated: July 26, 2024.

        Respectfully submitted,

        /s/ Michael A. Goldsticker
        Michael A. Goldsticker
        N.C. State Bar No. 57617
        PARKER POE ADAMS & BERNSTEIN LLP
        301 Fayetteville Street, Suite 1400
        P.O. Box 389 (27602-0389)
        Raleigh, North Carolina 27601
        Telephone:    (919) 828-0564
        Facsimile:    (919) 834-4564
        Email:    michaelgoldsticker@parkerpoe.com
        *Attorney for Defendant Range View Management,*
        *LLC; Lendvia LLC; Better Debt Solutions LLC; and*
        *Better Tax Relief LLC*

# EXHIBIT A

Query    Reports    Utilities    Help    Log Out

ACCO,(ADSx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:24-cv-01263-FWS-ADS

| | |
|---|---|
| Richard Collins et al v. Better Debt Solutions, LLC et al | Date Filed: 06/11/2024 |
| Assigned to: Judge Fred W. Slaughter | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Autumn D. Spaeth | Nature of Suit: 485 Telephone Consumer |
| Cause: 47:227 Restrictions of Use of Telephone Equipment | Protection Act (TCPA) |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Richard Collins**
*individually and on behalf of others
similarly situated*

represented by **Gustavo Ponce**
Kazerouni Law Group APC
245 Fischer Avenue Unit D1
Costa Mesa, CA 92626
800-400-6808
Fax: 800-520-5523
Email: gustavo@kazlg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David J McGlothlin**
Kazerouni Law Group APC
245 Fischer Avenue Unit D1
Costa Mesa, CA 92626
800-400-6808
Fax: 800-520-5523
Email: david@kazlg.com
*ATTORNEY TO BE NOTICED*

**Mona Amini**
Kazerouni Law Group APC
245 Fischer Avenue Unit D1
Costa Mesa, CA 92626
800-400-6808
Fax: 800-520-5523
Email: mona@kazlg.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bonnie Joe**
*individually and on behalf of others
similarly situated*

represented by **David J McGlothlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mona Amini**
(See above for address)
*ATTORNEY TO BE NOTICED*

Gustavo Ponce
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maxx Lyman**                                    represented by   **David J McGlothlin**
*individually and on behalf of others*                            (See above for address)
*similarly situated*                                              *ATTORNEY TO BE NOTICED*

                                                                  **Mona Amini**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Gustavo Ponce**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Better Debt Solutions, LLC**                    represented by   **Brent R Phillips**
                                                                  Phillips Law Corporation
                                                                  801 Parkcenter Drive Suite 105
                                                                  Santa Ana, CA 92705
                                                                  714-573-4087
                                                                  Fax: 714-586-5499
                                                                  Email:
                                                                  bphillips@phillipslawcorporation.com
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Lendvia LLC**
*doing business as*
Lendvia Financial
*doing business as*
One Street Financial

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/11/2024 | 1 | COMPLAINT Receipt No: ACACDC-37635839 - Fee: $405, filed by Plaintiffs Richard Collins, Maxx Lyman, Bonnie Joe. (Attorney Gustavo Ponce added to party Richard Collins(pty:pla), Attorney Gustavo Ponce added to party Bonnie Joe(pty:pla), Attorney Gustavo Ponce added to party Maxx Lyman(pty:pla))(Ponce, Gustavo) (Entered: 06/11/2024) |
| 06/11/2024 | 2 | CIVIL COVER SHEET filed by Plaintiffs Richard Collins, Bonnie Joe, Maxx Lyman. (Ponce, Gustavo) (Entered: 06/11/2024) |
| 06/11/2024 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Richard Collins, Bonnie Joe, Maxx Lyman. (Attachments: # 1 Summons Requested)(Ponce, Gustavo) (Entered: 06/11/2024) |

| 06/11/2024 | 4 | NOTICE of Interested Parties filed by Plaintiffs Richard Collins, Bonnie Joe, Maxx Lyman, (Ponce, Gustavo) (Entered: 06/11/2024) |
|---|---|---|
| 06/12/2024 | 5 | NOTICE OF ASSIGNMENT to District Judge Fred W. Slaughter and Magistrate Judge Autumn D. Spaeth. (et) (Entered: 06/12/2024) |
| 06/12/2024 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 06/12/2024) |
| 06/12/2024 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (et) (Entered: 06/12/2024) |
| 06/12/2024 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Better Debt Solutions, LLC. (et) (Entered: 06/12/2024) |
| 06/12/2024 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Lendvia LLC. (et) (Entered: 06/12/2024) |
| 06/12/2024 | 10 | CIVIL STANDING ORDER by Judge Fred W. Slaughter. (mku) (Entered: 06/12/2024) |
| 07/03/2024 | 11 | STIPULATION for Extension of Time to File Answer to 8/15/2024 filed by Defendant Better Debt Solutions, LLC. (Attachments: # 1 Proposed Order [Proposed] Order Granting Stipulation to Extend Time to File Response to Plaintiffs' Complaint)(Attorney Brent R Phillips added to party Better Debt Solutions, LLC(pty:dft))(Phillips, Brent) (Entered: 07/03/2024) |
| 07/03/2024 | 12 | ORDER GRANTING Joint Stipulation to Extend Time for Defendants to Respond to Plaintiffs Complaint 11 by Judge Fred W. Slaughter that Defendants' response to Plaintiffs' Complaint shall be filed on or before 8/15/2024 (jp) (Entered: 07/03/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2024 05:22:01 | | |
| **PACER Login:** | dalenohre | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:24-cv-01263-FWS-ADS End date: 7/25/2024 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiffs,*
*Richard Collins, Bonnie Joe, and Maxx Lyman*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD COLLINS, BONNIE JOE, and MAXX LYMAN, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>BETTER DEBT SOLUTIONS LLC and LENDVIA LLC D/B/A LENDVIA FINANCIAL D/B/A ONE STREET FINANCIAL,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C) ET SEQ.; AND**<br><br>2) **THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT. § 501.059**<br><br>**JURY TRIAL DEMANDED** |

//
//
//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

**INTRODUCTION**

1.      Plaintiffs Richard Collins ("Collins"), Bonnie Joe ("Joe") and Maxx Lyman ("Lyman") (together referred to as "Plaintiffs"), bring this action against Defendants Better Debt Solutions, LLC ("BDS"), and Lendvia LLC d/b/a Lendvia Financial d/b/a One Street Financial ("Lendivia") (together referred to as "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c).

2.      Further, Plaintiff Joe brings this class action against Defendants for its violations of the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA").

3.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

4.      In 1991 Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

5.      The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

6.      Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

7.     The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

8.     Defendant BDS is involved in business lending and consulting. Defendant BDS engages in unsolicited communication, harming thousands of consumers in the process.

9.     Defendant Lendivia is involved in business lending and consulting. Defendant Lendivia engages in unsolicited communication, harming thousands of consumers in the process.

10.    Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs alleges on personal knowledge.

11.    While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

12.    Unless stated otherwise, amongst the conduct engaged in by Defendants, much of it took place in the Central District of California.

13.    Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

14.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants' named herein.

15.    In response to Defendants' unlawful conduct, Plaintiffs seek an injunction requiring (a) Defendants to cease all unsolicited artificial and prerecorded voice phone calls and (b) Defendants to cease all unsolicited voice phone calls to numbers on the National Do-Not Call Registry ("DNC"), as well as an award of statutory damages to the members of the Classes (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for

- 3 -

1   knowing and/or willful violations).

2                   **JURISDICTION AND VENUE**

3       16.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331

4 because this case arises out of violations of federal law 47 U.S.C. § 227(c); and

5 supplemental jurisdiction over all other claims that are related to claims in the action

6 pursuant to 28 U.S.C. § 1367.

7       17.    Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because

8 Plaintiffs allege a national class, which will result in at least one class member

9 belonging to a different state than that of Defendants.  Plaintiffs seek up to $1,500.00

10 (one-thousand-five-hundred dollars) in damages for each call-in violation of the

11 TCPA, which, when aggregated among a proposed class numbering in the tens of

12 thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for

13 federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore,

14 both the elements of CAFA diversity jurisdiction and CAFA jurisdiction are present.

15       18.    Because Defendants conduct business within the State of California, and

16 its principal place of business is located in Irvine, California thus personal

17 jurisdiction is established.

18       19.    Venue is proper in the United States District Court for the Central

19 District of California pursuant to 18 U.S.C. § 1391 because the conduct complained

20 of herein occurred within this judicial district and many of the acts and transactions

21 giving rise to this action occurred in this judicial district because:

22                (a)    Defendants are, and were, authorized to conduct business in this

23                       judicial district and have intentionally availed themselves of the

24                       laws and markets within this district;

25                (b)    Defendants are located in this judicial district;

26                (b)    Defendants do substantial business within this judicial district;

27                (d)    the harm to Plaintiffs originated from within this judicial district.

28

ALM | LAW.COM RADAR

CLASS ACTION COMPLAINT

## **PARTIES**

20.     Plaintiff Collins is, and at all times mentioned herein was, a citizen and resident of the Stroudsburg, Pennsylvania.  Plaintiff Collins is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

21.     Plaintiff Joe is, and at all times mentioned herein was, a citizen and resident of the Land O Lakes, Florida.  Plaintiff Joe is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

22.     Plaintiff Lyman is, and at all times mentioned herein was, a citizen and resident of the Fargo, North Dakota.  Plaintiff Lyman is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

23.     Defendant BDS, and at all times mentioned herein was, a limited liability company whose principal place of business and/or headquarters is located in Irvine, California.  Defendant BDS, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).  At all times relevant herein, Defendant BDS conducted business in the State of California and within this judicial district.

24.     Defendant Lendvia, and at all times mentioned herein was, a limited liability company whose principal place of business and/or headquarters is located in Irvine, California.  Defendant Lendvia, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).  At all times relevant herein, Defendant Lendvia conducted business in the State of California and within this judicial district.

## **TCPA BACKGROUND**

25.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy...."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

26.     The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiffs.

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

27.    Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing), as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1]

28.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.    Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

29.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act [...] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

30.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

31.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

32.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

33.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

34.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re*

- 7 -
CLASS ACTION COMPLAINT

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

35.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

36.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

37.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (*quoting Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

38.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry ("DNC").

39.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."   *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or

CLASS ACTION COMPLAINT

1    entity.

2    40.    With respect to misdialed or wrong-number calls, the FCC recently
3    clarified that "callers who make calls without knowledge of reassignment and with a
4    reasonable basis to believe that they have valid consent to make the call should be
5    able to initiate one call after reassignment as an additional opportunity to gain actual
6    or constructive knowledge of the reassignment and cease future calls to the new
7    subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer*
8    *Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this
9    one additional call does not yield actual knowledge of reassignment, we deem the
10   caller to have constructive knowledge of such." *Id.*  Thus, any second call placed to a
11   wrong number violates the TCPA.

12   41.    The TCPA provides for damages in the amount of $500 for each
13   negligent violation and treble damages of $1,500 for each knowing or willful
14   violation. *See* 47 U.S.C. § 227(b)(3).

15   42.    The TCPA, through the accompanying FCC regulations, 47 C.F.R. §
16   64.1200(c) *et seq.*, affords special protections for "residential subscribers" who
17   register their phone numbers on the National Do Not Call Registry.

18   43.    Since 2003, persons who register cell phone numbers on the National Do
19   Not Call Registry have been considered to be "residential subscribers" for the
20   purpose of 227(c)(5) and the National Do Not Call Registry. *In Re Rules &*
21   *Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd.
22   14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the
23   national do-not-call list to be 'residential subscribers.'")

24   44.    47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each
25   person who receives more than one call within a 12-month period on their phone,
26   where that called party did not provide express written consent upon a clear and
27   conspicuous disclosure from the telemarketer, after the phone number was registered
28   on the National Do Not Call Registry for more than 31 days is entitled to recover a

- 10 -

1  penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or
2  knowingly violated.

3      45.    Decades after the TCPA passed into law, it is still unfortunately the case
4  that "[m]onth after month, unwanted telemarketing calls and texts top the list of
5  consumer complaints received by the [Federal Communications] Commission."
6  Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7                          **FLA. STAT. § 501.059**

8      46.    The FTSA's Caller ID Rules require that persons making Telephonic
9  Sales Calls[3] transmit – to the consumer's caller identification service – a telephone
10 number that is capable of receiving telephone calls. And, unlike claims for damages
11 for text message solicitations the called party does not consent to receive, claims for
12 violations of the Caller ID Rules are equally applicable to all Telephonic Sales Calls
13 (phone calls, text messages, or voicemails), regardless of whether they are solicited or
14 consented to, and irrespective of whether the offending phone call, text message or
15 voicemail is traditional, automated, or recorded.

16     47.    In short, whenever a person either makes any type of Telephonic Sales
17 Call or causes one to be made, that person must ensure that a telephone number is
18 transmitted with that Telephonic Sales Call to the consumer's Caller ID service that is
19 capable of receiving telephone calls and connects to either the telephone solicitor or
20 the Defendants. Whenever Telephonic Sales Call are made and the phone number
21 that is transmitted to the caller identification service is not capable of receiving phone
22 calls and/or does not connect to the caller or seller because it is not configured for
23 two-way communication, the Caller ID Rules have been violated and the aggrieved
24 party may bring an action for liquidated damages, and injunctive and declaratory

25

26

27 _____
   [3] "Telephonic Sales Call" is defined as "a telephone call, text message, or voicemail transmission to a
   consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of
28 credit for consumer goods or services, or obtaining information that will or may be used for the direct
   solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. §
   501.059(1)(j).

CLASS ACTION COMPLAINT

1  relief.

2        48.    Plaintiff Joe's cellular number is used for residential purposes and is

3  considered by her to be a residential number.

4        49.    Plaintiff Joe's telephone number ending in 0846 has received

5  Defendants' Telephonic Sales Calls.

6        50.    It is a violation of the FTSA to "make or knowingly allow a telephonic

7  sales call to be made if such call involves an automated system for the selection or

8  dialing of telephone numbers or the playing of a recorded message when a connection

9  is completed to a number without the prior express written consent of the called

10  party." Fla. Stat § 501.059(8)(A).

11        51.    The statute defines "telephonic sales call" as a "telephone call, text

12  message, or voicemail transmission to a consumer for the purpose of soliciting a sale

13  of any consumer goods or services, soliciting an extension of credit for consumer

14  goods services, or obtaining information that will or may be used for the direct

15  solicitation of a sale of consumer goods or services or an extension of credit for such

16  purposes." Fla. Stat. § 501.059(1)(I).

17        52.    A person will be defined as a "called party" if they are a "person who is

18  the regular user of the telephone number that receives a telephonic sales call," under

19  Fla. Stat. § 501.059(1)(A).

20        53.    An "unsolicited telephonic sales call" is one that is made other than in

21  direct response to the express request of the person who is called. under Fla. Stat. §

22  501.059(4)(K).

23                            **FACTUAL ALLEGATIONS**

24        54.    Plaintiffs incorporate by reference all of the above paragraphs of this

25  Complaint as though fully stated herein.

26        55.    In Defendants'  overzealous attempt to market its services and grow

27  significantly, Defendants knowingly and willfully (a) made (and continue to make)

28  unsolicited telemarketing phone calls, utilizing an artificial or prerecorded voice,

KAZEROUNI
LAW GROUP, APC

without the prior express written consent of the call recipients, and (b) unsolicited calls to persons who have registered their cellular telephone number on the DNC.

56.   Through this conduct, Defendants has invaded the personal privacy of Plaintiffs and other similarly situated consumers.

57.   At all times relevant, Defendants conducted business in the State of California, within this judicial district.

**Plaintiff Collins**

58.   At all times relevant, Plaintiff Collins resided in the State of Pennsylvania.

59.   At all relevant times, Plaintiff Collins was assigned, and was the owner of, a cellular telephone number of ending in 7000 ("Collins' Cell Phone"). Plaintiff Collins is the sole user and/or subscriber of Collins' Cell Phone.

60.   Plaintiff Collins was added to the DNC on May 12, 2020.

61.   Defendants are required to check the DNC before attempting to call. 47 U.S.C. § 227(c)(3)(F).

62.   On or around January 18, 2024, Plaintiff Collins received a phone call from Defendants, from 966-531-3231 to Plaintiff Collins' Cell Phone.

63.   Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

64.   On or around January 19, 2024, Plaintiff Collins received another phone call from Defendants, from 866-602-3030, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

65.   On or around February 8, 2024, Plaintiff Collins received a phone call from Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

66.   On the same day, Plaintiff Collins received another phone call from

CLASS ACTION COMPLAINT

Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

67.     On or around February 9, 2024, Plaintiff Collins received another phone call from Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

68.     On or around February 10, 2024, Plaintiff Collins, overwhelmingly concerned about Defendants' calls, called Defendants whom then emailed Plaintiff Collins confirming it was Defendants calling him and the email stated it was "Eli Manalo, a Senior Consultant with Lendvia Financial. I am in the office Monday through Friday until 5pm PST. My direct line is 949-516-7344." Who worked for Defendants BDS and Lendvia.

69.     Despite being on the DNC, Defendants made several unsolicited telemarketing calls to Plaintiff Collins on his personal cellular telephone, Collins' Cell Phone.

70.     Plaintiff Collins' cellular telephone number, Collins' Cell Phone, is used for personal and residential purposes.

71.     Plaintiff Collins did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call him.

72.     Plaintiff Collins did not give Defendants prior express invitation or express written consent for Defendants to make calls to Plaintiff Collins' cellular telephone number, Collins' Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47 U.S.C. § 227 (b)(1)(A).

73.     Plaintiff Collins did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

74.     Plaintiff Collins did not have a personal relationship with Defendants at any point in time.

75.     Plaintiff Collins did not give Defendants prior express invitation or express written consent for Defendants to call Plaintiff Collins' cellular telephone number for marketing or solicitation purposes.

76.     It was evident to Plaintiff Collins that the voice messages he heard were prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c) the tone, cadence, and inflection of the voice message, which sounded to Plaintiff Collins' ears like a prerecorded message, rather than a personal voice message that was placed personally for her by a live person.

77.     Based on Plaintiff Collins' own personal experience, the above-described call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

78.     Defendants placed at minimum two unsolicited calls to Plaintiff to Collins' Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

79.     The above-described calls by Defendants to Plaintiff Collins constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

80.     Defendants unsolicited telephone calls to Plaintiff Collins constituted telemarketing and had a commercial purpose.

81.     Upon information and belief, Defendants did not make such telephone solicitations in error.

**Plaintiff Lyman**

82.     At all times relevant, Plaintiff Lyman resided in the State of North Dakota.

83.     At all relevant times, Plaintiff Lyman was assigned, and was the owner of, a cellular telephone number of ending in 3877 ("Lyman's Cell Phone"). Plaintiff is the sole user and/or subscriber of Lyman's Cell Phone.

84.     Plaintiff Lyman was added to the DNC on January 3, 2005.

ALM | LAW.COM RADAR

85.     Defendants are required to check the DNC before attempting to call. 47 U.S.C. § 227(c)(3)(F).

86.     On or around August 28, 2023, Plaintiff Lyman received a phone call from Defendants, from 802-305-5976, to Plaintiff Lyman's Cell Phone. Defendants left a prerecorded voicemail with a callback number of 855-775-8814, which Plaintiff Lyman called and was met with a representative identifying themselves on behalf of Defendants. The representative also provided Plaintiff Lyman with the email address for Defendants "dbarroso@betterdebtsolutions.com".

87.     On or around August 29, 2023, Plaintiff Lyman received another phone call from Defendants, from 520-455-6533, to Plaintiff Lyman's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the day before, further solidifying that the message was in fact prerecorded.

88.     On September 1, 2023, Plaintiff Lyman received an email from Defendants dbarroso@betterdebtsolutions.com which provided "[M]ore information on our company" and links to the web addresses: "www.betterdebtsolutions.com" and "https://www.lendvia.com/" as well as links to their Better Business Bureau profile and Google reviews for Defendants.

89.     Despite being on the DNC, Defendants made several unsolicited telemarketing calls to Plaintiff Lyman on his personal cellular telephone, Lyman's Cell Phone.

90.     Plaintiff Lyman's cellular telephone number, Lyman's Cell Phone, is used for personal and residential purposes.

91.     Plaintiff Lyman did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call him.

92.     Plaintiff Lyman did not give Defendants prior express invitation or express written consent for Defendants to make calls to Plaintiff Lyman's cellular telephone number, Lyman's Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47 U.S.C. § 227 (b)(1)(A).

93.     Plaintiff Lyman did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

94.     Plaintiff Lyman did not have a personal relationship with Defendants at any point in time.

95.     Plaintiff Lyman did not give Defendants prior express invitation or express written consent for Defendants to call Plaintiff Lyman's cellular telephone number for marketing or solicitation purposes.

96.     It was evident to Plaintiff Lyman that the voice messages he heard were prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c) the tone, cadence, and inflection of the voice message, which sounded to Plaintiff Lyman's ears like a prerecorded message, rather than a personal voice message that was placed personally for her by a live person.

97.     Based on Plaintiff Lyman's own personal experience, the above-described call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

98.     Defendants placed at minimum two unsolicited calls to Plaintiff to Lyman's Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

99.     The above-described calls by Defendants to Plaintiff Lyman constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

100.    Defendants unsolicited telephone calls to Plaintiff Lyman constituted telemarketing and had a commercial purpose.

101.    Upon information and belief, Defendants did not make such telephone solicitations in error.

**Plaintiff Joe**

102.    At all times relevant, Plaintiff Joe resided in the State of Florida.

103.    At all relevant times, Plaintiff Joe was assigned, and was the owner of, a

ALM | LAW.COM RADAR

cellular telephone number of ending in 0846 ("Joe's Cell Phone"). Plaintiff Joe is the sole user and/or subscriber of Joe's Cell Phone.

104. Plaintiff Joe was added to the DNC on September 24, 2007.

105. Defendants is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

106. On or around November 11, 2023, Plaintiff Joe received phone call from Defendants, from 234-351-9272, to Joe's Cell Phone. Defendants left a pre-recorded message Defendants left a pre-recorded message with a call back number of 822-435-4428.

107. On or around November 16, 2023, Plaintiff Joe received phone call from Defendants, from 833-435-3663, to Joe's Cell Phone. Defendants left a pre-recorded message. Defendants left the exact, identical prerecorded voicemail as the November 11, 2023, voicemail, further solidifying that the message was in fact prerecorded.

108. On or around November 21, 2023, Plaintiff Joe received phone call from Defendants, from 844-740-1874, to Joe's Cell Phone. Defendants left a pre-recorded message. Defendants left the exact, identical prerecorded voicemail as the November 11, 2023, message.

109. On or around November 24, 2023, Plaintiff Joe received phone call from Defendants, from 833-431-3007, to Joe's Cell Phone. Defendants left a pre-recorded message with a call back number of 822-435-4428.

110. On or around November 25, 2023, Plaintiff Joe received phone call from Defendants, from 833-604-0953, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 24, 2023, message.

111. On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-604-0958, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

112. On the same day, once more, Plaintiff Joe received another phone call from Defendants, again from 833-604-0958, to Joe's Cell Phone. Defendants left the

ALM | LAW.COM RADAR

exact, identical prerecorded voicemail as the November 25, 2023, message.

113.   On or around November 27, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-669-1535, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

114.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-699-1547, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

115.   Again, on the same day, Plaintiff Joe received another phone call from Defendants, again from 833-431-2967, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

116.   On or around November 28, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-604-1557, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

117.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-604-2613, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

118.   On or around November 29, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-647-1633, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

119.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-647-1658, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

120.   On or around November 30, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-723-1477, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

121.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-723-1496 to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

122.   On or around December 1, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-759-1661, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

123.   On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-759-1661, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

124.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-759-1669, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

125.   For the fourth time, on the same day, Plaintiff Joe received another phone call from Defendants, from 833-782-0954, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

126.   On or around December 4, 2023, Plaintiff Joe received another phone call from Defendants, again from 844-740-1992, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

127.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-723-1508, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

128.   On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-723-1508, to Joe's Cell Phone. Defendants left a prerecorded voicemail message with the same call back number as all the previous calls.

129.   For the fourth time, on the same day, Plaintiff Joe received another phone call from Defendants, from 833-647-1667, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

130.   Yet again, on or around December 5, 2023, Plaintiff Joe received more phone calls from Defendants, this time from 877-936-8372, to Joe's Cell Phone. Defendants left a pre-recorded voicemail, providing the same call back number as the

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

1   previous calls, 822-435-4428.

2      131.  On the same day, Plaintiff Joe received another phone call from
3   Defendants, from 844-648-0976, to Joe's Cell Phone. Defendants left a pre-recorded
4   voicemail, providing the same call back number as the previous calls, 822-435-4428.

5      132.  Despite being on the DNC, Defendants made several unsolicited
6   telemarketing calls to Plaintiff Joe on his personal cellular telephone, Joe's Cell
7   Phone.

8      133.  Plaintiff Joe's cellular telephone number, Joe's Cell Phone, is used for
9   personal and residential purposes.

10      134.  Plaintiff Joe did not provide Defendants with his cellular telephone
11   number at any point in time, nor did he give permission for Defendants to call her.

12      135.  Plaintiff Joe did not give Defendants prior express invitation or express
13   written consent for Defendants to make calls to Plaintiff Joe's cellular telephone
14   number, Joe's Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47
15   U.S.C. § 227 (b)(1)(A), as well as Fla. Stat. § 501.059(1)(g).

16      136.  Plaintiff Joe did not have an established business relationship with
17   Defendants during the time of the telephone solicitations from Defendants.

18      137.  Plaintiff Joe did not have a personal relationship with Defendants at any
19   point in time.

20      138.  Plaintiff Joe did not give Defendants prior express invitation or express
21   written consent for Defendants to call Plaintiff Joe's cellular telephone number for
22   marketing or solicitation purposes.

23      139.  It was evident to Plaintiff Joe that the voice messages he heard were
24   prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c)
25   the tone, cadence, and inflection of the voice message, which sounded to Plaintiff
26   Joe's ears like a prerecorded message, rather than a personal voice message that was
27   placed personally for her by a live person.

28      140.  Based on Plaintiff Joe's own personal experience, the above-described

CLASS ACTION COMPLAINT

call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

141.   Defendants placed at minimum two unsolicited calls to Plaintiff to Joe's Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

142.   The above-described calls by Defendants to Plaintiff Joe constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

143.   Defendants unsolicited telephone calls to Plaintiff Joe constituted telemarketing and had a commercial purpose.

144.   Upon information and belief, Defendants did not make such telephone solicitations in error.

145.   Defendants failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

146.   Compliance with the FTSA will not result in Defendants having to cease its business operations.

147.   Compliance with the FTSA will not result in Defendants having to alter the prices of goods or services it provides in the marketplace.

148.   Compliance with the FTSA will not force Defendants to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

149.   Because Defendants' FTSA violations occurred in Florida, requiring Defendants' compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

150.   The telemarketing text messages at issue caused Plaintiffs and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction,

1 and their seclusion was intruded upon, forcing them to divert attention away from
2 their work, home life and other activities, inconvenience, wasted time, risk of future
3 harm, causing disruption to their work, sleep, and other activities, and violations of
4 their substantive statutory rights under the TCPA and FTSA to remain free of
5 unsolicited calls.

6     151.   Upon information and belief, at all relevant times, Defendants failed to
7 establish and implement reasonable practices and procedures to effectively prevent
8 telephone solicitations in violation of the regulations prescribed under 47 U.S.C. §
9 227(c)(5) and the FTSA.

10     152.   Upon information and belief, Defendants did not make the telephone
11 solicitations in error.

12     153.   Through the aforementioned conduct, Defendants repeatedly violated
13 the TCPA, 47 U.S.C. §§ 227, et seq., numerous times, as well as the FTSA.

14 **As to All Plaintiffs**

15     154.   Upon information and belief, at all relevant times, Defendants failed to
16 establish and implement reasonable practices and procedures to effectively prevent
17 telephone solicitations in violation of the regulations prescribed under 47 U.S.C. §
18 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(c)(5),
19 including 47 C.F.R. § 64.1200(c).

20     155.   Upon information and belief, Defendants made the same or substantially
21 similar above-described telephone solicitations *en masse* to thousands of consumers
22 nationwide.

23     156.   Because Plaintiffs were each alerted when a call was made to their
24 personal cellular telephones, the unsolicited telephone solicitations that Defendants
25 transmitted to Plaintiffs' cellular device invaded Plaintiffs' privacy, caused
26 aggravation, annoyance, intrusion upon on seclusion, and were a distraction and
27 nuisance to Plaintiffs.

28     157.   Plaintiffs were personally affected and damaged by Defendants'

- 23 -
CLASS ACTION COMPLAINT

aforementioned conduct because Plaintiffs suffered an invasion of a legally protected interest in privacy, which is specifically protected by the TCPA. Plaintiffs felt harassed, were frustrated, and distressed that Defendants annoyed Plaintiffs with unwanted telephonic solicitations without neither of Plaintiffs' prior express written consent.

158. Defendants' telephonic communications forced Plaintiffs and Class members to be deprived of the privacy and utility of their cellular telephones by forcing Plaintiffs and Class members to ignore or reject calls, silence their cellular telephones, and/or block incoming numbers, took up memory on Plaintiffs' cellular phone, and/or interrupted their desired use of their cellular telephones, as a result of Defendants' repeated calls in violation of the TCPA.

159. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendants made such calls to consumers without their consent and/or with prerecorded voices, and made calls to telephone numbers on the DNC, Defendants failed to respect the limitations imposed by the TCPA. In doing so, Defendants invaded Plaintiffs' and similarly situated individuals' privacy and violates the spirit and intent behind the TCPA.

160. Through the above conduct, Defendants violated 47 U.S.C. §§ 227, *et seq*. and 47 C.F.R. § 64.1200, thereby invading Plaintiffs' and similarly situated individuals' privacy and violating their legally protected rights.

## STANDING

161. Plaintiffs have standing under Article III of the Constitution of the United States of America because Plaintiffs' claims state: (a) valid injuries in fact; (b) which are traceable to the conduct of Defendants; and (c) are likely to be redressed by a favorable judicial decision. *See, Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *Injury In Fact*

162. Plaintiffs' injuries in fact must be both "concrete" and "particularized"

- 24 -

in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

163.   For an injury to be "concrete" it must be "*de facto*", meaning that it actually exists. *Eichenberger v. ESPN, Inc*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiffs have suffered a concrete injury as Defendants made numerous unauthorized solicitation calls to Plaintiffs' respective cellular telephone numbers using an artificial and/or prerecorded voice, without any of Plaintiffs' prior express consent. Further, Defendants also placed calls to Plaintiffs while each of the Plaintiffs cellular telephone number were registered with the DNC. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. All these injuries are *de facto* and concrete.

164.   For an injury to be "particularized" means that the injury must "affect the [p]laintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendants invaded Plaintiffs' privacy by making numerous unauthorized calls utilizing an artificial and/or prerecorded voice to Plaintiffs' cellular telephones without Plaintiffs' prior express consent, as well as Defendants placing calls to Plaintiffs while their cellular telephone number were registered with the DNC. Furthermore, Plaintiffs were disturbed, distracted, felt harassed and aggravated, by having to take time, reject or silence calls and dismiss alerts for unwanted calls from Defendants. All of these injuries are particularized and specific to Plaintiffs.

### *Traceable to Defendants' Conduct*

165.   The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that its injuries are traceable to the conduct of Defendants.

166.   The above calls are directly and explicitly linked to Defendants.  The voice messages each indicated they were from Defendants and had common phrases, and repeated the same words. Further, the Defendants emailed Plaintiffs after some of the calls confirming it was them calling Plaintiffs. The above-described calls from

- 25 -

Defendants are the source of Plaintiffs' injuries caused by Defendants. Therefore, Plaintiffs has illustrated facts above that show that Plaintiffs' injuries are traceable to the conduct of Defendants.

### *Redressability*

167. The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

168. In the present case, Plaintiffs' Prayer for Relief below includes a request for damages for each call made by Defendants, as authorized by statute for Defendants' violations of 47 U.S.C. §§ 227, et seq., and 47 C.F.R. § 64.1200. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs.

169. Further, Plaintiff Joe's Prayer for Relief for the FTSA Class below includes a request for damages for each call made by Defendants, as authorized by statute for Defendants' violations of the FTSA. The statutory damages were set to specifically redress the financial damages suffered by Plaintiff Joe in Florida.

170. Because on the foregoing, Plaintiffs have Article III standing to sue Defendants on the claims stated herein.

### CLASS ACTION ALLEGATIONS

171. All Plaintiffs brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves individually and on behalf of the Class defined as follows:

> **Prerecorded Voice Class**
> All persons within the United States (1) whom received any telephone call/s from Defendants, its employees and/or agents, (2) for the purpose promoting Defendants' goods or services, (3) to said person's cellular telephone (4) made through the use of an artificial or prerecorded voice and (5) without prior express consent in writing from said person to receive such calls (6) within the four years prior to the filing of this action.

- 26 -

**Do-Not Call Registry Class:**

All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation call (3) made by or on behalf of Defendants, (4) for the purpose of promoting Defendants' goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

172.  Plaintiff Joe brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself individually and on behalf of the Class defined as follows:

**FTSA Class**

All persons within the State of Florida who received any solicitation/telemarketing phone calls or text messages from Defendants using an automated system for the selection or dialing of telephone numbers to said person's cellular telephone and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

173.  Defendants and their employees or agents are excluded from the Classes.

174.  Plaintiffs reserve the right to modify the definition of the Classes as warranted as facts are learned in further investigation and discovery.

175.  Plaintiffs do not know the number of members in each of the Class, but upon information and belief, but believes the Class members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

176.  Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiffs and the members of the Class via their telephones, for solicitation purposes, and/or utilizing an artificial or prerecorded voice, without prior express consent, thereby invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and the Class members were damaged thereby.

177.  Further, Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its

- 27 -

agents, illegally contacted Plaintiffs and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiffs and the Class members whose cellular telephone numbers were on the DNC. Plaintiffs and the Class members were damaged thereby.

178. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

179. Plaintiffs reserve the right to expand the definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

180. The joinder of the Class members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

181. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including the following:

    a.  Whether, within the four years prior to the filing of this Complaint, Defendants or its agents placed marketing calls to cellular telephone numbers;

    b.  Whether Defendants made phone calls to consumers using an artificial or pre-recorded voice to any telephone number assigned to a cellular phone service;

    c.  Whether, within the four years prior to the filing of this Complaint, Defendants or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the DNC

CLASS ACTION COMPLAINT

and who had neither an established business relationship nor personal relationship with Defendants;

d. Whether Defendants obtained prior express written consent to place telephone solicitations to Plaintiffs or the Class members' telephones;

e. Whether Defendants' conduct violated the TCPA;

f. Whether Defendants willfully or knowingly violated the TCPA;

g. Whether Defendants conduct violated the FTSA;

h. Whether Defendants willfully or knowingly violated the FTSA and its regulations;

i. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation;

j. Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

k. Whether Plaintiffs and the members of the Class are entitled to attorney fees and costs for Defendants' acts and conduct;

l. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future; and

m. Whether Plaintiffs and the Class are entitled to any other relief.

182.    As a person who received telephone solicitation from Defendants, who did not have an established business relationship or personal relationship with Defendants, who did not provide Defendants prior express invitation or permission to receive telephone solicitations, and who did not provide Defendants prior express consent to receive telephone calls utilizing an artificial or prerecorded voice, Plaintiffs is asserting claims that are typical of the Class.  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no known interests antagonistic to any member of the Class.

183.    Plaintiffs and the members of the Class have all suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically

- 29 -

CLASS ACTION COMPLAINT

addressed and protected by the TCPA, (and the FTSA as to Plaintiff Joe), as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

184. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

185. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions, including claims involving violations of the Telephone Consumer Protection Act and FTSA

186. Plaintiffs have no interest antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiffs.

187. This class action is appropriate for class certification because Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole.

188. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

189. This case is also appropriate for class certification because class

KAZEROUNI
LAW GROUP, APC

proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

190. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

191. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

192. Even if members of the Class could sustain such individual litigation, a class action would still be preferable because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

193. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

194. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227, *ET SEQ.*

### (ON BEHALF OF EACH PLAINTIFF AND THE CLASS)

195. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

196. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, et seq.

- 31 -

197.  Defendants and/or their agents placed at several unauthorized calls to Plaintiffs' cellular telephones using an artificial and/or prerecorded voice without Plaintiffs' prior express consent.

198.  As a result of Defendants' conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations.

199.  As a result of Defendants' violations of the TCPA, Plaintiffs are entitled to and seek injunctive relief prohibiting such conduct by Defendants violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

200.  Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiffs and the Class.

**COUNT II**

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**REGARDING THE NATIONAL DO-NOT CALL REGISTRY**

**47 U.S.C. § 227(C)(5)**

**47 C.F.R. § 64.1200(C)**

201.  Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

202.  At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

203.  Defendants made unsolicited and unauthorized phone calls to the cellular telephones of Plaintiffs and the Class members, cellular telephones which were registered with the DNC, for the purpose of marketing products and/or services to Plaintiffs and the Class.

204.  Defendants knew that it did not have prior express written consent to make these calls and knew or should have known that it was calling cellular numbers

on the DNC in violation of the TCPA.

205. Defendants willfully or knowingly allowed telemarketing calls to be placed to Plaintiffs' and the Class Members' cellular telephone numbers on the DNC. For instance, Defendants could have determined from a review of its own business records and the DNC that it could not contact Plaintiffs and/or Class members yet disregarded such information and placed illegal and unwanted solicitation calls.

206. Because Defendants knew or should have known that Plaintiffs' and the Class Members' cellular telephone numbers were on the DNC, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

207. As a result of Defendants' violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

208. Plaintiffs and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

209. Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiffs and the Class.

### COUNT III

### VIOLATIONS OF THE FLORIDA TELEPHONE CONSUMER PROTECTION ACT

### FLA. STAT. § 501.059

#### (ON BEHALF OF PLAINTIFF JOE AND THE FTSA CLASS)

210. Plaintiff Joe re-alleges and incorporates the foregoing allegations as if fully set forth herein.

211. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other

- 33 -

members of the Class in violation of Fla. Stat § 501.059(8)(A).

212. Under Fla. Stat § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendants did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when these telephonic sales calls were made. *Id.*

213. Defendants has, therefore, violated Fla. Stat § 501.059(8)(A) AND Fla. Stat § 501.059(1)(G) by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

214. Defendants knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

215. As a result of Defendants conduct and pursuant to Fla. Stat § 501.059(10)(B), Plaintiff Joe and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation

## **PRAYER FOR RELIEF**

**WHEREFORE**, as to the ***Prerecorded Voice Class*** and ***Do-Not Call Registry Class***, Plaintiffs respectfully requests the Court grant Plaintiffs and the Class members the following relief against Defendants:

- An order certifying this matter as a class action with Plaintiffs as Class Representative and designating Plaintiffs' counsel as Class Counsel.
- Injunctive relief prohibiting Defendants from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);
- Statutory damages of $500.00 for Plaintiffs and each member the Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

- 34 -

KAZEROUNI
LAW GROUP, APC

- Statutory damages of $1,500.00 for Plaintiffs and each member the Class for each and every one of Defendants' willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);
- An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

**WHEREFORE,** as to the ***FTSA Class***, Plaintiff Joe respectfully requests the Court grant Plaintiff Joe and the Class members the following relief against Defendants:

- An order certifying this matter as a class action with Plaintiff Joe as Class Representative for the FTSA Class, and designating Plaintiff Joe's counsel as Class Counsel.
- An order declaring that Defendants' actions, as set out above, violate the FTSA, and its implementing regulations;
- Statutory damages of $500 per text message, for each FTSA violation;
- Willful damages at $1,500 per call, for each FTSA violation;
- Injunctive relief prohibiting Defendants from engaging in such conduct in the future;
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and;
- All other and further relief as the Court deems necessary, just, and proper.

///
///
///

CLASS ACTION COMPLAINT

# DEMAND FOR JURY TRIAL

216.   Plaintiffs, individually and on behalf of the Classes, demands a jury trial on all issues so triable.

Dated: June 11, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:    */s/ Gustavo Ponce*

DAVID J. MCGLOTHLIN, ESQ.
MONA AMINI, ESQ.
GUSTAVO PONCE, ESQ.
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# EXHIBIT B

ACCO,(KESx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:24-cv-01438-JWH-KES

Aaron Rapp v. Range View Management LLC et al
Assigned to: Judge John W. Holcomb
Referred to: Magistrate Judge Karen E. Scott
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 06/28/2024
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer
Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Aaron Rapp**
*Individually and*
*on behalf of*
All others Similarly Situated

represented by **David J McGlothlin**
Kazerouni Law Group APC
245 Fischer Avenue Unit D1
Costa Mesa, CA 92626
800-400-6808
Fax: 800-520-5523
Email: david@kazlg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Seyed Abbas Kazerounian**
Kazerouni Law Group APC
245 Fischer Avenue Suite D1
Costa Mesa, CA 92626
800-400-6808
Fax: 800-520-5523
Email: ak@kazlg.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Range View Management LLC**
*doing business as*
Lendvia

represented by **Brent R Phillips**
Phillips Law Corporation
801 Parkcenter Drive Suite 105
Santa Ana, CA 92705
714-573-4087
Fax: 714-586-5499
Email:
bphillips@phillipslawcorporation.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Better Debt Solutions LLC**

represented by **Brent R Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2024 | 1 | COMPLAINT Receipt No: ACACDC-37745856 - Fee: $405, filed by Plaintiff Aaron Rapp. (Attorney David J McGlothlin added to party Aaron Rapp(pty:pla))(McGlothlin, David) (Entered: 06/28/2024) |
| 06/28/2024 | 2 | CIVIL COVER SHEET filed by Plaintiff Aaron Rapp. (McGlothlin, David) (Entered: 06/28/2024) |
| 06/28/2024 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Aaron Rapp. (Attachments: # 1 Summons)(McGlothlin, David) (Entered: 06/28/2024) |
| 06/28/2024 | 4 | NOTICE of Interested Parties filed by Plaintiff Aaron Rapp, (McGlothlin, David) (Entered: 06/28/2024) |
| 07/02/2024 | 5 | NOTICE OF ASSIGNMENT to District Judge James V. Selna and Magistrate Judge Karen E. Scott. (sh) (Entered: 07/02/2024) |
| 07/02/2024 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (sh) (Entered: 07/02/2024) |
| 07/02/2024 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (sh) (Entered: 07/02/2024) |
| 07/02/2024 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Better Debt Solutions LLC, Range View Management LLC. (Attachments: # 1 Range View Management LLC) (sh) (Entered: 07/02/2024) |
| 07/03/2024 | 9 | ORDER RETURNING CASE FOR REASSIGNMENT by Judge James V. Selna. ORDER case returned to the Clerk for random reassignment pursuant to General Order 23-05. Case randomly reassigned from Judge James V. Selna to Judge John W. Holcomb for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:24-cv-01438-JWH-(KESx). (dve) (Entered: 07/03/2024) |
| 07/03/2024 | 10 | STANDING ORDER by Judge John W. Holcomb. (cla) (Entered: 07/03/2024) |
| 07/15/2024 | 11 | PROOF OF SERVICE Executed by Plaintiff Aaron Rapp, upon Defendant Range View Management LLC served on 7/9/2024, answer due 7/30/2024. in compliance with Federal Rules of Civil Procedure by personal service (McGlothlin, David) (Entered: 07/15/2024) |
| 07/15/2024 | 12 | PROOF OF SERVICE Executed by Plaintiff Aaron Rapp, upon Defendant Better Debt Solutions LLC served on 7/5/2024, answer due 7/26/2024. in compliance with Federal Rules of Civil Procedure by personal service (McGlothlin, David) (Entered: 07/15/2024) |
| 07/24/2024 | 13 | STIPULATION Extending Time to Answer the complaint as to All Defendants, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant Better Debt Solutions LLC, Range View Management LLC. (Attachments: # 1 Proposed Order {Proposed} Order Granting Extension to File Responsive Pleading)(Attorney Brent R Phillips added to party Better Debt Solutions LLC(pty:dft), Attorney Brent R Phillips added to party Range View Management LLC(pty:dft))(Phillips, Brent) (Entered: 07/24/2024) |
| 07/24/2024 | 14 | (IN CHAMBERS) ORDER by Judge John W. Holcomb: The Court has reviewed the parties' Stipulation [ECF No. 13], and it is hereby APPROVED. Defendants' response to Plaintiffs' Complaint shall be filed on or before August 26, 2024.IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. TEXT ONLY ENTRY (Entered: 07/24/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2024 05:23:18 | | |
| **PACER Login:** | dalenohre | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:24-cv-01438-JWH-KES End date: 7/25/2024 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
*Aaron Rapp*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aaron Rapp, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    vs.<br><br>RANGE VIEW MANAGEMENT LLC d/b/a Lendvia, and BETTER DEBT SOLUTIONS  LLC,<br><br>              Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA), 47 U.S.C. §§ 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

//
//
//
//
//
//
//
//

- 1 -

CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff AARON RAPP ("Plaintiff"), individually and on behalf of all others similarly situated, brings this nationwide Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant RANGE VIEW MANAGEMENT LLC d/b/a Lendvia ("Lendvia"), and BETTER DEBT SOLUTIONS LLC ("BDS") (hereinafter collectively referred to as "Defendants"), in negligently and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, ("TCPA") and related regulations, thereby invading Plaintiff's privacy, specifically for claims under the National Do Not Call provision of 47 C.F.R. § 64.1200(c).

2. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

3. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

4. Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

5. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

6. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of any Defendants' name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendants named.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law. 47 U.S.C. § 227(c).

11. Because Defendants conduct business within the State of California, personal jurisdiction is established.

12. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

    (a)    Defendants are authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    (b)    Defendants are located in this district;

    (b)    Defendants do substantial business within this district;

- 3 -
CLASS ACTION COMPLAINT

(c)    Defendants are subject to personal jurisdiction in this judicial district because Defendants have availed itself of the laws and markets within this district; and,

(d)    the harm to Plaintiff originated from within this judicial district.

## PARTIES

13. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Indiana. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

14. Plaintiff is informed and believes, and thereon alleges, that Defendant Lendvia is, and at all times mentioned herein was, a foreign limited liability company headquartered in Cheyenne, Wyoming. Defendant Lendvia is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39). Plaintiff alleges that at all times relevant herein Defendant Lendvia conducted business in the State of California and within this judicial district.

15. Plaintiff is informed and believes, and thereon alleges, that Defendant BDS is, and at all times mentioned herein was, a domestic limited liability company headquartered in headquartered in Irvine, California. Defendant BDS is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39). Plaintiff alleges that at all times relevant herein Defendant BDS conducted business in the State of California and within this judicial district.

## FACTUAL ALLEGATIONS

16. According to its website, Lendvia provides loans and debt consolidation solutions to consumers throughout the US.

17. BDS offers debt resolution solutions to consumers including loans and debt consolidations.

18. Essentially, Lendvia and BDS are the same company using interchangeable names.

19. Lendvia and Better Debt Solutions are also located in the same location, i.e.

2525 Main St, Irvine, California.

20. In Defendants' overzealous attempt to market their services and grow significantly, Defendants knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls without the prior express written consent of the call recipients.

21. Through this method, Defendants have invaded the personal privacy of Plaintiff and members of the Class.

**Plaintiff Receives Unsolicited Telemarketing from Defendants**.

22. Plaintiff, himself, registered his cellular telephone number ending in 6267 ("Cell Phone") with the National Do Not Call Registry in 2004.

23. Plaintiff did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call it.

24. Plaintiff did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

25. Plaintiff did not have a personal relationship with Defendants at any point in time.

26. Plaintiff did not give Defendants prior express invitation or consent in writing for Defendants to call Plaintiff's personal cellular telephone for marketing or solicitation purposes.

27. Pursuant to 47 U.S.C. § 227(c)(3)(F), Defendants are required to check the National Do Not Call Registry before attempting to call.

28. Despite their obligations under the TCPA, Defendants began unlawfully soliciting Plaintiff on his Cell Phone.

29. Specifically, in January 2024, Plaintiff began receiving calls from call centers that identified themselves as "Credit One Lending" from phone number (888) 406-3095.

30. After receiving the second call on February 8, 2024 from phone number (888)

406-9464, Plaintiff told them to stop calling his phone number as he was not interested in their services.

31. Even though Plaintiff requested that Defendants stop calling, Plaintiff received six additional calls from the 9464 number as well as (888) 406-8434.

32. On the eighth call, Plaintiff spoke with a person claiming to be from Credit One Lending.

33. Frustrated with the continued harassment, Plaintiff asked where they obtained his information.

34. The caller claimed "we got your information from public records."

35. Thereafter, Plaintiff was transferred to a Mr. Nicholas Kim.

36. Mr. Kim advised Plaintiff that he was calling from "Better Debt Solutions."

37. Plaintiff told Mr. Kim that the initial call told him the company was "Credit One Lending."

38. Mr. Kim responded that the "Credit One Lending" is the initial name they use to screen people.

39. Mr. Kim stated that BDS is a subsidiary of LendVia.

40. Plaintiff was confused and thus, Mr. Kim emailed him with information and his email signature as follows:

From: **Nicholas Kim** <nkim@betterdebtsolutions.com>
Date: Thu, Feb 1, 2024 at 3:56 PM
Subject: Lendvia Financial Credentials
To: **REDACTED**

Below is our contact information and that of our affiliates. It will also include our credentials, testimonies, website, and Better Business Bureau rating.

Here is a link to our Better Business Bureau rating.
Here is a link to our page on Trustpilot.

Welcome to Lendvia! - Lendvia



**Nicholas Kim | Better Debt Solutions**
Senior Debt Advisor
📞 **(949) 401-7953** ☎ (866) 212-4229
✉ nkim@betterdebtsolutions.com
🌐 www.betterdebtsolutions.com
📍 2525 Main St Suite 500 Irvine, CA 92614

41. Plaintiff told Mr. Kim that he's registered on the DNC list and that did not understand how or why they called him.

42. Thereafter, Mr. Kim confirmed that Plaintiff did not apply for any type of loan with Defendants' online or otherwise.

43. When Plaintiff further pressed Mr. Kim about obtaining his information, Mr. Kim stated "Well we do have a direct working relationship with Trans Union and that's where we pull our credit from and "we may have some options here to help you alleviate your finances here."

44. Exasperated, Plaintiff pushed back and said he didn't apply for anything so how did he get his name.

45. Mr. Kim then acknowledged that "he just works through the application process but doesn't actually know how he got his information."

46. Such calls constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services related to credit repair.

47. Plaintiff received more than two telephone solicitations from Defendants within a 12-month period.

48. Defendants' unsolicited telephone calls constituted telemarketing and had a commercial purpose.

49. Upon information and belief, Defendants did not make the telephone solicitations in error.

50. Upon information and belief, at all relevant times, Defendants failed to

CLASS ACTION COMPLAINT

1    establish and implement reasonable practices and procedures to effectively
2    prevent telephone solicitations in violation of the regulations prescribed under
3    47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

51. Upon information and belief, Defendants made the same or substantially
    similar above-described telephone solicitations *en masse* to thousands of
    consumers nationwide.

52. Because Plaintiff is alerted when a call is made to Plaintiff's cellular
    telephone, the unsolicited telephone solicitation that Defendants transmitted to
    Plaintiff's cellular device invaded Plaintiff's privacy, was a nuisance, and
    distracted and aggravated Plaintiff upon receipt.

53. Plaintiff was personally affected and damaged by Defendants' aforementioned
    conduct because Plaintiff suffered an invasion of a legally protected interest in
    privacy, which is specifically protected by the TCPA. Plaintiff was frustrated
    and distressed that Defendants annoyed Plaintiff with unwanted telephonic
    solicitations, without Plaintiff's prior express written consent, and while
    Plaintiff's telephone number was registered on the National Do Not Call
    Registry.

54. Defendants' telephonic communications forced Plaintiff and Class members to
    live without the utility of their cellular telephones by forcing Plaintiff and Class
    members to silence their cellular telephones and/or block incoming numbers
    and/or interrupted their desired use of their cellular telephones.

55. The TCPA was intended to give individuals control over how and where they
    receive telephonic communications. When Defendants initiate such
    communications to consumers without their consent, Defendants fail to respect
    the limitations imposed by the TCPA. In doing so, Defendants invade Plaintiff
    and similarly situated persons' privacy and violates the spirit and intent behind
    the TCPA.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

56. Through the above conduct, Defendants violated 47 U.S.C. §§ 227, *et seq*. and the National Do Not Call provision of 47 C.F.R. § 64.1200(c).

**Other Consumer Complaints About Defendants' Unlawful Telemarketing**

57. In addition to Plaintiff's experiences, Defendants have been accused of invading the privacy of other consumers throughout the country using the same unlawful telemarketing tactics.

58. Specifically, the Better Business Bureau pages for Lendvia and Better Debt Solutions contain multiple complaints about unsolicited telemarketing calls,

59. For LendVia, the BBB has a complaint that indicates:

"SCAMMERS! They call me 30x a day and refuse to remove me from their call list. I HAVE NO PEACE OF MIND. They illegally obtained my information and are breaking FTC guidelides by calling me, as I am on the National Do Not Call List. Remove me and leave me alone!"

60. For Better Debt Solutions, two consumers complained:

"Predatory lending service. They call you unsolicited. Tell you that they can get you an unsecured loan to cover some of your unsecured debt. Then switch you into a debt restructuring offer that ruins your credit and your credit lines shut you down. If you arent financially literate, this place is a hack. I tried to cancel when I figured this out and they just stopped responding"

"Scam!! Called my phone every hour for weeks eventho I told them to stop. Numerous representatives hung up on me when I asked to talk to a supervisor."

61. Based on the foregoing, Plaintiff has reason to believe that Defendants have called thousands of wireless telephone customers to market its products and services without prior express written consent and/or after consumers revoked their consent in a reasonable manner.

**CLASS ACTION ALLEGATIONS**

62. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

- 9 -

CLASS ACTION COMPLAINT

63. Plaintiff represents, and is a member of, the Class, consisting of:

> All persons within the United States, registered on the National Do Not Call Registry for at least 31 days, to whom Defendants and/or a third party acting on Defendants' behalf, made two more telephone solicitations that promoted Defendants' products or services, to a cellular telephone number within any twelve-month period, within the four (4) years prior to the filing of the Complaint.

64. Defendants and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

65. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the National Do Not Call Registry. Plaintiff and the Class members were damaged thereby.

66. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

67. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records and the National Do Not Call Registry.

68. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual

- 10 -

Class members, including the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the National Do Not Call Registry and who had neither an established business relationship nor personal relationship with Defendants;

   b. Whether Defendants obtained prior express written consent to place telephone solicitations to Plaintiff or the Class members' telephones;

   c. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

   d. Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

69. As a person who received numerous telephone solicitations from Defendants within a 12-month period, who did not have an established business relationship or personal relationship with Defendants, and who did not provide Defendants prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

70. Plaintiff and the members of the Class have all suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

- 11 -

KAZEROUNI
LAW GROUP, APC

71. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

72. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

73. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## NEGLIGENT VIOLATIONS OF THE TCPA

## 47 U.S.C. §§ 227, *ET SEQ.*

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*, including implementing regulation 47 C.F.R. § 64.1200(c).

76. As a result of Defendants' negligent violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

77. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

KAZEROUNI
LAW GROUP, APC

**SECOND CAUSE OF ACTION**

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**

**47 U.S.C. §§ 227, *ET SEQ.***

78. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

79. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*, including implementing regulation 47 C.F.R. § 65.1200(c).

80. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

81. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendants:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing Plaintiff's Counsel as Class Counsel;

- An Order declaring Defendants' conduct, as alleged above, was in violation of the TCPA and the National Do Not Call provision of 47 C.F.R. § 64.1200(c);

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

- As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; (vi) any other relief the Court may deem just and proper; and

- As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; and (vi) any other relief the Court may deem just and proper.

- Costs of suit.

- Pre and post-judgment interest, to the extent permitted by applicable law.

- Reasonable attorneys' fees to Plaintiff's counsel pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and the common fund doctrine.

- Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

82. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: June 28, 2024                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:     *s/ David J. McGlothlin*
          ABBAS KAZEROUNIAN, ESQ.
          DAVID J. MCGLOTHLIN, ESQ.
          *Attorneys for Plaintiff*

- 14 -
CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

# EXHIBIT C

7/25/24, 8:25 AM                         District Version 1.7.1.2

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 83 of 135   PageID 248
Case Pending No. 50   Document 1   Filed 07/26/24   Page 2 of 16

JURY

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CIVIL DOCKET FOR CASE #: 4:24-cv-00488-P

Pinn v. Better Tax Relief LLC
Assigned to: Judge Mark Pittman
Demand: $9,999,000
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 05/27/2024
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer
Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Kelly Pinn**

represented by **Andrew Roman Perrong**
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
215-225-5529
Fax: 888-329-0305
Email: a@perronglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony I Paronich**
Paronich Law PC
350 Lincoln Street, Suite 2400
Hingham, MA 02043
617-485-0018
Fax: 508-318-8100
Email: anthony@paronichlaw.com
*ATTORNEY TO BE NOTICED*

**Sharon K Campbell**
Law Office of Sharon K Campbell
3500 Oak Lawn Ave, Suite 205
Dallas, TX 75219
214-351-3260
Fax: 214-443-6055
Email: sharon@sharonkcampbell.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Better Tax Relief LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

7/25/24, 8:25 AM

Case 4:24-cv-00488-P Document 9 Filed 08/07/24 Page 84 of 135 PageID 249
Case Pending No. 50 Document District Version 7/26/24 Page 3 of 16

| 05/27/2024 | 1 | COMPLAINT WITH JURY DEMAND against BETTER TAX RELIEF LLC filed by Kelly Pinn. (Filing fee $405; Receipt number ATXNDC-14647705) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet) (Perrong, Andrew) (Entered: 05/27/2024) |
|---|---|---|
| 05/27/2024 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Kelly Pinn. (Clerk QC note: Affiliate entered in ECF). (Perrong, Andrew) Modified docket text on 5/29/2024 (saw). (Entered: 05/27/2024) |
| 05/27/2024 | 3 | New Case Notes: A filing fee has been paid. File to: Judge Pittman. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (saw) (Entered: 05/29/2024) |
| 05/29/2024 | 4 | Summons Issued as to Better Tax Relief LLC. (saw) (Entered: 05/29/2024) |
| 05/29/2024 | 5 | NOTICE of Attorney Appearance by Sharon K Campbell for Anthony Paronich on behalf of Kelly Pinn. (Campbell, Sharon) (Entered: 05/29/2024) |
| 06/10/2024 | 6 | WAIVER OF SERVICE Returned Executed as to Better Tax Relief LLC. Waiver sent on 6/9/2024. (Paronich, Anthony) (Entered: 06/10/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2024 07:24:58 | | |
| **PACER Login:** | dalenohre | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:24-cv-00488-P |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 85 of 135   PageID 250
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 4 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 1 of 13   PageID 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>v.<br><br>BETTER TAX RELIEF LLC<br><br><br>                     Defendant. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Kelly Pinn ("Ms. Pinn"), by her undersigned counsel, for this class action complaint against Defendant Better Tax Relief LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 86 of 135   PageID 251
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 5 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 2 of 13   PageID 2

2.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making prerecorded telemarketing calls to cell phones, including her own.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.      PARTIES

5.   Plaintiff Pinn is an individual who resides in the Northern District of Texas.

6.   Defendant Better Tax Relief LLC is a corporation with its headquarters and primary place of business in California.

## III.      JURISDICTION AND VENUE

7.   <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has

2

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 87 of 135   PageID 252
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 6 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 3 of 13   PageID 3

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violations of the Texas Business and Commerce Code relates to the same telemarketing campaign as the TCPA claim.

8. <u>Personal Jurisdiction</u>: The Court has specific personal jurisdiction over Defendant Better Tax Relief LLC because it is a corporation that sent calls to telephone numbers into Texas, thus directly aiming its conduct to Texas.

9. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this district.

## IV.   FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 88 of 135   PageID 253
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 7 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 4 of 13   PageID 4

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

15.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

16.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices to business lines. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory*

4

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 89 of 135   PageID 254
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 8 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 5 of 13   PageID 5

*Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

**B.    The Texas Business and Commerce Code**

18.    Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

19.    The burden of proof lies on Defendant to show it registered each business location to prove it licensure or on proving an exemption. *Id.* § 302.051.

20.    The sale of IRS tax negotiation services is not a product or service for which there is an exemption to the Code. *Id.* § 302.051.

21.    Defendant Better Tax Relief is not registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying "Better Tax" or "Better Tax Relief" as either a DBA or seller name returns no results).

**C.    Unsolicited Telemarketing to Plaintiff**

22.    Plaintiff Pinn is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.    Plaintiff's residential cellular telephone number is (817)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24    Page 90 of 135   PageID 255
Case Pending No. 50   Document 1-6   Filed 07/26/24    Page 9 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24    Page 6 of 13   PageID 6

24.    Ms. Pinn uses the number for personal, residential, and household reasons.

25.    The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

26.    Plaintiff Pinn never consented to receive calls from Defendant.

27.    Plaintiff Pinn never did business with the Defendant.

28.    Despite this, Plaintiff received a total of at least one automated, prerecorded telephone call from Defendant's number 770-677-0682 as part of a telemarketing campaign. The call was sent on March 18, 2024 at 13:10j.

29.    When the Plaintiff answered the call, an artificial computer-generated robotic voice played, which stated the following pre-recorded message:

> This is Jessica from the United Relief Program. I'm calling you back regards to your back taxes that may qualify for a complete removal if they resulted from a hardship. Would you like to see if you qualify?

30.    The call was clearly pre-recorded using an artificial voice because (a) there was a long delay between when the Plaintiff responded "yes" in an effort to identify the caller and when the robot responded that it would transfer the Plaintiff to a human being, (b) the robot had a generic and unnatural monotone voice and did not sound like legitimate human speech but rather sounded like a computer generated voice, and (c) the robot eventually transferred the Plaintiff to a human being "tax advisor" after a long delay, hold music, and ringing.

31.    Thereafter, the Plaintiff was transferred to Mike Gomez, an employee of the Defendant.

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 91 of 135   PageID 256
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 10 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 7 of 13   PageID 7

32.     Mr. Gomez sent the Plaintiff multiple text messages with his name, two phone

numbers, 949-203-7290 and 949-590-9832, as well as links to the Defendant's Better Business

Bureau profile and Google Business reviews.

33.     Mr. Gomez also sent the Plaintiff an email with pertinent documents selling the

Defendant's services, including a tax investigation service agreement:

## Better Tax Relief Documents
1 message

**Mike Gomez** <bettertaxrelief.postman@postman.io>                                    Mon, Mar 18, 2024 at 1:35 PM
Reply-To: Mike Gomez <mgomez@bettertaxrelief.com>
To:



### Mike Gomez | Better Tax Relief
Settlement Officer

📞 (949) 590-9832  ☎ (866) 309-7718
📧 mgomez@bettertaxrelief.com
🌐 www.bettertaxrelief.com
📍 2525 Main Street, Suite 550, Irvine, CA 92614

    

CONFIDENTIALITY NOTICE. This e-mail transmission and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or if you are not responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. For legal advice, please consult with an attorney. For tax advice, please consult with an accountant.

**3 attachments**

📄 **Tax Investigation Service Agreement.PDF**
    167K

📄 **2848.pdf**
    77K

📄 **8821.pdf**
    62K

34.     The call was unwanted.

Case 4:24-cv-00488-P    Document 9    Filed 08/07/24    Page 92 of 135    PageID 257
Case Pending No. 50    Document 1-6    Filed 07/26/24    Page 11 of 16
Case 4:24-cv-00488-P    Document 1    Filed 05/27/24    Page 8 of 13    PageID 8

35.     The call was a nonconsensual encounter.

36.     Plaintiff's privacy has been violated by the above-described prerecorded telemarketing message.

37.     Plaintiff never provided her consent or requested the message.

38.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

39.     Class Definition. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or numbers for which they were charged for the call (2) Defendant, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint to trial.

> **Texas Business and Commerce Code Class**: All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendant, (2) at any time during which Defendant was not registered as a telephone solicitor with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

40.     Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

41.     The Classes, as defined above, are identifiable through telephone records and telephone number databases.

8

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 93 of 135   PageID 258
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 12 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 9 of 13   PageID 9

42.     The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

43.     Individual joinder of these persons is impracticable.

44.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

45.     Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

46.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

47.     This class action complaint seeks injunctive relief and money damages.

48.     There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

        a.      Whether Defendant systematically used systems to send calls using artificial or pre-recorded voices;

        b.      whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

        c.      whether Defendant made telephone solicitations to members of the Texas Business and Commerce Code class without the required registration; and

        d.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 94 of 135   PageID 259
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 13 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 10 of 13   PageID 10

49.     Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

50.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

51.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

52.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

53.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes

10

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 95 of 135   PageID 260
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 14 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 11 of 13   PageID 11

appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227(b))
### (On Behalf of Plaintiff and the Robocall Class)

54.      Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

55.      The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

56.      The Defendant's violations were negligent, willful, or knowing.

57.      As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

58.      Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

11

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 96 of 135   PageID 261
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 15 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 12 of 13   PageID 12

## SECOND CAUSE OF ACTION
### Texas Business and Commerce Code
### Violations of Texas Business and Commerce Code § 302.101
### (On Behalf of Plaintiff and the Texas Business and Commerce Code Class)

59.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

60.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

61.     Defendant's violations were negligent, willful, or knowing.

62.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

12

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 97 of 135   PageID 262
Case Pending No. 50   Document 1-6   Filed 07/26/24   Page 16 of 16
Case 4:24-cv-00488-P   Document 1   Filed 05/27/24   Page 13 of 13   PageID 13

D.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls using artificial or prerecorded voice, absent an emergency circumstance;

E.      An award to Plaintiff and the Classes of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this May 27, 2024.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

/s/ Anthony Paronich
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT D

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 99 of 135   PageID 264

Query     Reports     Utilities     Help     Log Out

# U.S. District Court [LIVE]
## Western District of Texas (El Paso)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00155-KC

Silva v. Lendvia LLC, a California Limited Liability Company
Assigned to: Judge Kathleen Cardone
Demand: $60,000
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 05/03/2024
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer
Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Barbara Silva**

represented by **Barbara Silva**
8749 Coloma Circle
El Paso, TX 79907
(915) 887-8790
PRO SE

V.

**Defendant**

**Lendvia LLC, a California Limited
Liability Company**

represented by **Steven Albert Costello**
Silberman Law Firm, PLLC
7 West Way Court
Suite B
Lake Jackson, TX 77566
979-236-8271
Fax: 832-442-4806
Email: scostello@silblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/03/2024 | 1 | COMPLAINT ( Filing fee $ 405.00 receipt number 2285), filed by Barbara Silva. (Attachments: # 1 Civil Cover Sheet, # 2 filing fee receipt)(jg1) (Entered: 05/06/2024) |
| 05/03/2024 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Berton (jg1) (Entered: 05/06/2024) |
| 05/03/2024 | 2 | Summons Issued as to Lendvia LLC, a California Limited Liability Company. (jg1) (Entered: 05/06/2024) |
| 07/08/2024 | 3 | SUMMONS Returned Executed by Lendvia LLC, a California Limited Liability Company. Lendvia LLC, a California Limited Liability Company served on 7/2/2024, answer due 7/23/2024. (jg1) (Entered: 07/08/2024) |
| 07/20/2024 | 4 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by Lendvia LLC, a California Limited Liability Company. (Attachments: # 1 Proposed Order Proposed Order)(Costello, Steven) (Entered: 07/20/2024) |

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 100 of 135   PageID 265
Case Pending No. 50   Document CM/ECF LIVE - U.S. District Court:txwd   Page 3 of 21

| 07/22/2024 | Text Order GRANTING 4 Motion for Extension of Time to Answer. Defendants deadline to file an answer or otherwise respond to Plaintiffs Complaint is EXTENDED to August 22, 2024. SO ORDERED. Entered by Judge Kathleen Cardone. (This is a text-only entry generated by the court. There is no document associated with this entry.) (KC) (Entered: 07/22/2024) |
| 07/22/2024 | Set/Reset Deadlines: Lendvia LLC, a California Limited Liability Company answer due 8/22/2024. (jg1) (Entered: 07/22/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/25/2024 07:25:48 | | | |
| **PACER Login:** | dalenohre | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00155-KC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

JUDGE KATHLEEN CARDONE

# UNITED STATES DISTRICT COURT
## Western District of Texas
## El Paso Division

2024 MAY -3 P 3: 13

DISTRICT OF TEXAS

# EP24CV0155

| | | |
|---|---|---|
| Barbara Silva | § | |
| | § | |
| Plaintiff, | § | Case No. _____ |
| | § | |
| v. | § | |
| | § | Jury Demanded |
| Lendvia LLC, a California Limited Lia- | § | |
| bility Company | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff, Barbara Silva ("**Plaintiff**") files this action against Lendvia, LLC (**"Lendvia"**) for violations of the Telephone Consumer Protection Act and Texas Business and Commerce Code.

1. **Introduction**

    1.1. This action arises out of Defendants' practice of making unauthorized telemarketing calls to individuals on the National Do-Not-Call Registry without prior express written consent (or any consent whatsoever) and to individuals who have requested not to be called, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and provisions of the Texas Business & Commerce Code.

    1.2. Plaintiff's telephone number was registered on the National Do-Not-Call Registry at the time of the calls and was so registered for more than 31 days prior to the calls.

2. **Parties.**

    2.1. Plaintiff is, and at all times mentioned herein was, a citizen and resident of this District

—1—

and was present in Texas for all calls received, in this case in El Paso County, Texas.

2.2. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2.3. Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

2.4. Plaintiff is, and at all times mentioned herein was, a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

2.5. Lendvia, LLC ("Lendvia") is a is a limited liability company organized and existing under the laws of California and can be served via registered agent Republic Registered Agent LLC, 17350 State Hwy 29, Suite 220, Houston, Texas 77064.

2.6. Defendant is and at all times mentioned herein a "person" as defined by 47 U.S.C. § 153 (39).

2.7. Defendant is and at all times mentioned herein a, "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

2.8. Defendant is and at all times mentioned herein was, a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

**3.  Jurisdiction and Venue.**

3.1. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

3.2. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

3.3. This Court has specific personal jurisdiction over Defendant Lendvia because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

    3.3.1. Defendant Lendvia targets Texas when marketing debt relief services and regularly conducts business in this District, including telephone solicitation.

    3.3.2. Lendvia called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Lendvia's debt services.

    3.3.3. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant Lendvia, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction.

3.4. Venue is proper because the Plaintiff is a resident of this District and Defendants have sufficient contacts in this State and District to subject them to personal jurisdiction. As set forth above, Defendants targeted residents of this District and made calls into this State.

**4. The Law Regarding Robocalls**

4.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

4.2. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

4.3. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

4.4. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

4.5. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and

—4—

conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012).

**5. The National Do Not Call Registry**

5.1. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

5.2. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

5.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

5.4. The Federal Communications Commission found that it "must mandate procedures for

—5—

establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

5.5. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7).

5.6. Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, **and a telephone number or address at which the person or entity may be contacted.** 47 CFR 64.1200(d)(4) (emphasis added).

5.7. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d).

5.8. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have provided the required information on each of the calls.

5.9. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)... empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company.

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

—6—

> In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

5.10.    These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

5.11.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

5.12.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and

ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

5.13.      Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## 6.  Individual Liability

6.1. Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

6.2. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov*

—8—

*of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693,

at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*,

No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Uni-*

*versal Elections,* 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an individual

acting on behalf of a corporation could avoid individual liability, the TCPA would lose

much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp.

2d 736, 745 (D. Md. 2008).

## 7. Spoofing is Illegal

7.1. The regulations enforcing and interpreting the TCPA, also require that any person or
entity that engages in telemarketing must transmit caller identification information.[2]
47 C.F.R. § 64.1601(e). **This prevents a telemarketer from "spoofing" (using a false
identification for their marketing calls) the telephone number from which the tele-
marketing call is made. Additionally, the regulations require telemarketers to** provide
the name of the telemarketer when available by the telemarketer's carrier and the
seller's customer service number.

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering in-
formation, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

7.2. Here Defendants did not comply with the requirements of 47 C.F.R. § 64.1601(e) as it provided incorrect information regarding the number from which the calls were being made.

8. **Texas' Anti Solicitation and Robo-Calling Statutes**

8.1. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

8.2. Sellers engaging in telephone solicitations are required to register, and among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

8.3. Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

8.4. Pursuant to section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

9.  **Factual Allegations**

9.1. Plaintiff personally successfully registered her phone number ending in 8790 on the National Do-Not-Call Registry ("DNC") on February 4, 2022.

9.2. Plaintiff registered her phone number in order to gain seclusion from unwanted solicitation phone calls.

9.3. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff pays the cell phone from her personal accounts and the phone is not primarily used for any business purpose.

9.4. Plaintiff did not consent to any of the phone calls alleged herein.

9.5. Plaintiff was registered on the National DNC at all times relevant to this Complaint.

9.6. Plaintiff began prerecorded phone calls from Defendant on September 6, 2023.

9.7. Plaintiff has received at least eight (8) phone calls from Defendants despite not needing their loan services.

9.8. Plaintiff received the first phone call on September 6, 2023, from phone number 209-306-7349. Plaintiff did not answer this phone call and was left a voicemail with

—11—

prerecorded voice message from "Dan from Prompt Financial." The prerecorded voice message instructed Plaintiff to call 833-652-7555.

9.9. Plaintiff received the same exact phone calls as paragraph 9.8 from Defendant on September 7, 2023, and September 14, 2023. Each of these phone calls left Plaintiff the same voicemail with the same prerecorded message.

9.10. On October 12, 2023, and October 17, 2023, Plaintiff received phone calls from phone number 929-799-4609. Plaintiff did not answer the phone calls. The calls went to voicemail and Plaintiff was left the same exact voicemail as in paragraph 9.8.

9.11. On November 1, 2023, Plaintiff received a phone call that displayed 254-428-7512 on Plaintiff's caller identification, Plaintiff did not answer the phone and was left a prerecorded voice message from "Dan from Prompt Financial," and instructed Plaintiff to call 833-652-7555.

9.12. On November 24, 2023, and November 25, 2023, Plaintiff received phone calls from 833-431-2998 and 833-604-0958 that were not answered. Each of these missed phone calls resulted in prerecorded voice messages being left as voice mails on Plaintiff's phone. Each of the voice messages was from "Dan from Prompt Financial" and instructed Plaintiff to call 833-435-4428.

9.13. On April 1, 2024, Plaintiff called the 833-652-7555 phone number that was instructed to call in the voicemails containing the prerecorded.

9.14. Plaintiff was solicited for debt relief services via a consumer loan by Defendant.

Plaintiff's Complaint

9.15.     On April 2, 2024, Plaintiff had her friend call phone number 835-435-4428 as

part of her investigation.  Plaintiff's friend was solicited for Debt relief by Defendant

when he called 835-435-4428.

9.16.     Table A below displays the calls made to Plaintiff by Defendant Lendiva

TABLE A

| Number: | Date: | Time: | Caller ID: | Notes: |
|---------|-------|-------|------------|--------|
| 1. | 09/06/2023 | 4:55 PM | 209-306-7349 | Prerecorded message |
| 2. | 09/07/2023 | 6:33 PM | 209-306-7349 | Prerecorded message |
| 3. | 09/14/2023 | 5:34 PM | 209-306-7349 | Prerecorded message |
| 4. | 10/12/2023 | 6:13 PM | 929-799-4609 | Prerecorded message |
| 5. | 10/17/2023 | 12:14 PM | 929-799-4609 | Prerecorded message |
| 6. | 11/01/2023 | 8:38 AM | 254-428-7512 | Prerecorded message |
| 7. | 11/24/2023 | 11:31 AM | 833-431-2998 | Prerecorded message |
| 8. | 11/25/2023 | 10:20 AM | 833-604-0958 | Prerecorded message |

9.17.     On April 29, 2024, Plaintiff searched on the Texas Secretary of State website

https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid

Texas Solicitation Registration as required by Texas Business and Commerce Code

302.101 for Lendvia.

9.18.     Defendant has never had a valid Texas Solicitation Registration.

—13—

9.19.      Plaintiff was located in El Paso, Texas at all times, and the phone calls came to Plaintiff's El Paso, TX 915 area code phone number.

9.20.      Plaintiff was irritated and confused by the solicitation phone calls and had to spend time and energy investigating the origin of the phone calls.

9.21.      Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

9.22.      No emergency necessitated the calls.

9.23.      Through information and belief, Defendant Lendvia did not have a written do-not-call policy while it was sending Ms. Silva unsolicited calls.

## 10. FIRST CAUSE OF ACTION - Violations of the TCPA, 47 U.S.C. § 227(b)

10.1.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

10.2.      Defendants placed, or had placed on their behalf, eight (8) prerecorded telemarketing telephone calls to Plaintiff's cellular telephone number without prior express written consent.

10.3.      Defendants have therefore violated 47 U.S.C. § 227(b).

10.4.      As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

10.5.      Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

—14—

**11. SECOND CAUSE OF ACTION – Violations of the TCPA. 47.U.S.C § 227(c)**

11.1.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

11.2.     Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

11.3.     Plaintiff's telephone number was on the National Do-Not-Call Registry at the time of calls.

11.4.     Plaintiff received two or more such calls in a 12-month period.

11.5.     Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of eight (8) solicitation phone calls..

11.6.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**12. THIRD CAUSE OF ACTION - Violations of the TCPA, 47 U.S.C. § 227(c)**

12.1.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12.2.     Defendants placed, or had placed on its behalf, two or more telemarketing telephone calls to Plaintiff's residential telephone numbers in a 12-month period.

12.3.     Defendants did so despite not providing a telephone number or address at which the person or entity making the call could be contacted.

12.4.     Thus, Defendants did so without complying with the identification and disclosure requirements.  47 C.F.R. § 64.1200(d)(4).

—15—

12.5.    Plaintiff is entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5) for each of eight (8) solicitation phone calls.

12.6.    Plaintiff is entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5) for eight (8) solicitation phone calls.

**13. FOURTH CAUSE OF ACTION - Violations of Texas Business and Commerce Code, § 302.101**

13.1.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

13.2.    Defendants failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to § 302.101 of the Texas Business and Commerce Code.

13.3.    Defendants placed telephone solicitations to Plaintiff's telephone numbers.

13.4.    Defendants' telephone solicitations were made from a location in Texas or to Plaintiff while he was located in Texas.

13.5.    Plaintiff is entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees for each of eight (8) solicitation phone calls.

**14. FIFTH    CAUSE OF ACTION – Violations of Texas Business and Commerce Code, § 305.053**

14.1.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

14.2.    Defendants placed in a 12-month period more than one telemarketing telephone calls to Plaintiff's telephone number.

—16—

14.3.    Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

14.4.    Plaintiff is entitled to:

14.4.1. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

14.4.2. the greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

14.4.3. the greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## 15. Prayer for Relief

15.1.    Plaintiff prays for the following relief:

15.1.1. An order declaring that Defendants' actions, as set out above, violate the TCPA and the Texas Business and Commerce Code because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

15.1.2. An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101.

15.1.3. An award of statutory damages under the Texas Business and Commerce Code;

15.1.4. An award of treble damages;

15.1.5. An award of reasonable attorneys' fees and costs, including the costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d); and

15.1.6. All other relief, in law and in equity, to which Plaintiff may be entitled.

## 16. Jury Demand

16.1.     Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

May 1, 2024,

By: _____

Barbara Silva
8749 Coloma Circle
El Paso, TX 79907
Bbrios259@gmail.com
915-887-8790

—18—

# EXHIBIT E

Case 4:24-cv-00488-P   Document 9   Filed 08/07/24   Page 120 of 135   PageID 285

# U.S. District Court [LIVE]
## Western District of Texas (El Paso)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00215-LS

Herrera v. Lendvia LLC, a California Limited Liability Company
Assigned to: District Judge Leon Schydlower
Demand: $29,000
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 06/20/2024
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Nubia Herrera**                                   represented by   **Nubia Herrera**
7519 North Loop
El Paso, TX 79915
915-888-0489
PRO SE

V.

**Defendant**

**Lendvia LLC, a California Limited Liability Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/20/2024 | 1 | COMPLAINT ( Filing fee $ 405.00 receipt number 2423), filed by Nubia Herrera. (Attachments: # 1 filing fee receipt, # 2 Civil Cover Sheet)(jg1) (Entered: 06/21/2024) |
| 06/20/2024 |  | If ordered by the court, all referrals will be assigned to Magistrate Judge Berton (jg1) (Entered: 06/21/2024) |
| 06/20/2024 | 2 | Summons Issued as to Lendvia LLC, a California Limited Liability Company. (jg1) (Entered: 06/21/2024) |
| 07/23/2024 | 3 | SUMMONS Returned Executed by Nubia Herrera. Lendvia LLC, a California Limited Liability Company served on 7/16/2024, answer due 8/6/2024. (jg1) (Entered: 07/23/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/25/2024 07:26:42 | | |
| **PACER Login:** | dalenohre | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00215-LS |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

**FILED**

2024 JUN 20 AM 9: 03

WESTERN DISTRICT OF TEXAS

BY _____

DEPUTY

| | |
|---|---|
| NUBIA HERRERA, | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **LENDVIA LLC, a California Limited Liability Company** | § |
| | § |
| | § |
| **Defendants** | § |
| | § |

**EP24CV0215-LS**

## PLAINTIFF'S COMPLAINT

Plaintiff, Nubia Herrera ("Plaintiff") files this action against Lendvia, LLC ("Lendvia" or "Defendant") for violations of the Telephone Consumer Protection Act and Texas Business and Commerce Code.

## PARTIES

1.      Plaintiff Nubia Herrera ("Plaintiff") is a natural person, a resident of this District and was present in Texas for all calls received in this case.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2.      Defendant LENDVIA LLC ("Lendvia") is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent Nima Asadi, Esq. 19200 Von Karman Avenue, suite 600, Irvine, California 92612.

## JURISDICTION AND VENUE

3.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

4.      This Court also has supplemental subject matter jurisdiction over the state law claims

under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they

form a single case or controversy.

5.      Personal Jurisdiction. This Court has specific personal jurisdiction over Defendant

Lendvia because Defendant purposefully availed itself to Texas and this District, and there is a

sufficient relationship between Defendants' purposeful contacts with Texas and the litigation:

      a.   Defendant targets Texas when marketing debt relief services, including telephone

          solicitations, and regularly conducts business in this District.

      b.   Lendvia called Plaintiff's Texas area phone number ending in 0489 to generate

          leads for Defendants.

      c.   These calls to Texas injured Plaintiff in Texas, creating a causal link among

          Defendant, the forum, and the litigation that exceeds the non-causal affiliation

          sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont.*

          *Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6.      Venue is proper because Plaintiff is a resident of this District and Defendant has

sufficient contacts in this State and District to subject them to personal jurisdiction. As set forth

above, Defendant targeted residents of this District and made calls into this State.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of

47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency

Congress vested with authority to issue regulations implementing the TCPA, such calls are

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient.

12.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded

telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered

that:

> [A] consumer's written consent to receive telemarketing robocalls must be
> signed and be sufficient to show that the consumer:  (1) received "clear and
> conspicuous disclosure" of the consequences of providing the requested
> consent, i.e., that the consumer will receive future calls that deliver
> prerecorded messages by or on behalf of a specific seller; and (2) having
> received this information, agrees unambiguously to receive such calls at a
> telephone number the consumer designates.[] In addition, the written

3

agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012)

13.     The national Do Not Call Registry (the "Registry") allows consumers to register their

telephone numbers and thereby indicate their desire not to receive telephone solicitations at those

numbers.  See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored

indefinitely, or until the registration is cancelled by the consumer or the telephone number is

removed by the database administrator." *Id.*

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential and wireless telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. §

64.1200(c)(2).

15.     The regulations exempt from liability a caller who has obtained the subscriber's signed,

written agreement to receive telephone solicitations from the caller. 47 C.F.R. §

64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls

may be placed. *Id.*

16.     The Federal Communications Commission found that it "must mandate procedures for

establishing company-specific do-not-call lists to ensure effective compliance with and

enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

17.     These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically, these

regulations require a company to provide the called party with the name of the individual caller,

the name of the person or entity on whose behalf the call is being made, **and a telephone**

**number or address at which the person or entity may be contacted.** 47 CFR 64.1200(d)(4)

(emphasis added).

4

18.     These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d)).

19.     Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have provided the required information on each of the calls.

20.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

21.     These requirements are separate but cumulative.  In other words, a company must comply with both the required information and comply with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

22.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR §

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

64.1200(e).

23.     Further, a person or entity can be liable for calls made on its behalf in violation of the

TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs.*

*Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's

"rules generally establish that the party on whose behalf a solicitation is made bears ultimate

responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding

declaratory ruling clarifying that sellers "may be held vicariously liable under federal common

law principles of agency for TCPA violations committed by third-party telemarketers . . . under a

broad range of agency principles, including not only formal agency, but also principles of

apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for*

*Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

24.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its

behalf under a number of theories including vicarious liability. Under those circumstances,

including as described herein as to Defendants, the seller is properly deemed to have initiated the

call through the person or entity that actually placed the call.

25. .    Individuals acting on behalf of a corporation may be held personally liable for violations

of the TCPA if they "had direct, personal participation in or personally authorized the conduct

found to have violated the statute." *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 898

(W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct,

personal participation in or personally authorized the conduct found to have violated the statute,

and was not merely tangentially involved. Individuals who directly (and here, knowingly and

willfully) violate the TCPA should not escape liability solely because they are corporate

officers.").

6

26.     A number of other federal district courts have concluded that individuals acting on behalf

of a corporation may be held personally liable under the TCPA when they directly participated

in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David*

*Randall Assocs., Inc.,* 885 F.3d 154, 161 (3rd Cir. 2018)*; Bais Yaakov of Spring Valley v.*

*Graduation Source, LLC,* No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29,

2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 3:12 CV 2257, 2014 WL

1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections,* 787 F. Supp. 2d

408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could

avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel.*

*Co. v. Hot Leads Co., LLC,* 584 F. Supp. 2d 736, 745 (D. Md. 2008).

27.     The regulations enforcing and interpreting the TCPA, also require that any person or

entity that engages in telemarketing must transmit caller identification information.[2]  47 C.F.R. §

**64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for**

**their marketing calls) the telephone number from which the telemarketing call is made.**

**Additionally, the regulations require telemarketers to** -provide the name of the telemarketer

when available by the telemarketer's carrier and the seller's customer service number.

28.     Here Defendants did not comply with the requirements of 47 C.F.R. **§ 64.1601(e) as it**

**provided incorrect information regarding the number from which the calls were being**

**made.**

### TEXAS' SOLICITATION REGISTRATION AND ROBO-CALLING STATUTES

29.     Section 302.101 of the Texas Business & Commerce Code prohibits sellers from

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering
information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. **§ 64.1601(e).**

engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

30.    Sellers engaging in telephone solicitations are required to register, and among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

31.    Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

32.    Pursuant to section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

### FACTUAL ALLEGATIONS

33.    Plaintiff personally and successfully registered her phone number ending in 0489 to the National Do-Not-Call Registry ("DNC") on April 3, 2024.

34.    Plaintiff registered her phone number in order to gain seclusion from unwanted solicitation phone calls.

35.    The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to

communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff pays the cell phone from her personal accounts and the phone is not primarily used for any business purpose.

36.     Plaintiff did not consent to any of the phone calls alleged herein.

37.     Plaintiff was registered on the National DNC at all times relevant to this Complaint.

38.     Plaintiff received the first prerecorded phone call that displayed 213-877-7751 on the caller identification from Defendant on April 26, 2024. Plaintiff answered the phone and a prerecorded message from "Dan from Prompt Financial" began to play. Plaintiff hung up the phone.

39.     Plaintiff received a second prerecorded phone call that displayed 626-553-7561 on the caller identification from Defendant on May 9, 2024. Plaintiff answered the phone and a prerecorded message from "Dan from Prompt Financial" began to play. Plaintiff hung up the phone.

40.     Plaintiff received a third prerecorded phone call that displayed 620-900-9156 on the caller identification from Defendant on May 13, 2024. Plaintiff answered the phone and a prerecorded message from "Dan from Prompt Financial" began to play. Plaintiff pressed one to see who was behind the "Dan from Prompt Financial" prerecorded messages.

41.     Plaintiff had no interest in the Defendant's services or products and continued the phone call for the sole purpose of uncovering who was violating the TCPA.

42.     Plaintiff was connected to Anthony Magallon ("Magallon") who attempted to solicit Plaintiff for debt relief services. The call dropped.

43.     Magallon called Plaintiff back from phone number 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 and continued the

9

solicitation.

44.    Magallon eventually sent Plaintiff an email that stated Magallon was a Senior Debt

Advisor with Lendvia Financial.  The email was sent from amagallon@lendviafinancial.net.

Exhibit A.

45.    Plaintiff did not have an existing business relationship with Defendant and never

consented to receive prerecorded phone calls from Defendant.

46.    Plaintiff did not consent to any of the calls alleged herein.

47.    Table A shows the calls sent to Plaintiff by Defendant.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Notes: |
|---------|-------|-------|------------|--------|
| 1. | 4/26/2024 | 12:09 PM | 213-877-7751 | prerecorded message call |
| 2. | 5/09/2024 | 2:24 PM | 626-553-7561 | prerecorded message call |
| 3. | 5/13/2024 | 11:07 AM | 620-900-9156 | prerecorded message call |
| 4. | 5/13/2024 | 11:15 AM | 949-606-1672 | Sent an email from agallon@lendviafinancial.net |

48.    On June 1, 2024, Plaintiff searched on the Texas Secretary of State website

https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas

Solicitation Registration as required by Texas Business and Commerce Code 302.101 for

Lendvia.

49.    Defendant has never had a valid Texas Solicitation Registration.

50.    Plaintiff was located in El Paso, Texas at all times, and the phone calls came to Plaintiff's

El Paso, TX 915 area code phone number.

51.    Each and every call was placed without the maintenance of an internal do-not-call policy.

Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

52.     No emergency necessitated the calls.

53.     Through information and belief, Defendant Lendvia did not have a written do-not-call policy while it was sending unsolicited calls.

54.     Defendant placed multiple unauthorized prerecorded robocalls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

55.     Each and every prerecorded voice message phone calls was a knowing and willful violation because the act was intentional. A prerecorded voice message phone call can only be purposefully placed, and cannot be an accident or mistake.

### INJURY TO PLAINTIFF

56.     Defendant's calls invaded Plaintiff's privacy and were a nuisance.

57.     Defendant's calls confused Plaintiff and caused Plaintiff to become aggravated.

58.     Defendant's refusal to properly identify themselves and the company on whose behalf the phone calls were being made caused Plaintiff to have to spend valuable time investigating the origin of the phone calls.

59.     Plaintiff was angry, frustrated, and annoyed by the Defendant's phone calls.

60.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

61.     Defendants' calls resulted in Plaintiff using her battery which resulted in more frequent charging of her cell phone, which reduced Plaintitff's enjoyment of her cell phone.


### COUNT ONE:

11

(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))

62.     Plaintiff re-alleges and re-adopts paragraphs 1 through 63 of the Complaint as if fully set forth herein.

63.     Defendant placed, or had placed on their behalf, three (3) prerecorded telemarketing telephone calls to Plaintiff's cellular telephone number without prior express written consent.

64.     Defendant has therefore violated 47 U.S.C. § 227(b).

65.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

66.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))
### (Against All Defendants)

67.     Plaintiff incorporates the preceding paragraphs 1-63 as if fully set forth herein.

68.     Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

69.     Plaintiff's telephone number was on the National Do-Not-Call Registry at the time of calls.

70.     Plaintiff received two or more such calls in a 12-month period.

71.     Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of three (3) solicitation phone calls.

72.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call

made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT THREE:

### Violations of Texas Business and Commerce Code, § 302.101

73. Plaintiff realleges and incorporates paragraphs 1-63 as it fully set forth herein.

74. . Defendants failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to § 302.101 of the Texas Business and Commerce Code.

75. Defendant placed telephone solicitations to Plaintiff's telephone number.

76. Defendants' telephone solicitations were made from a location in Texas or to Plaintiff while he was located in Texas.

77. Plaintiff is entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees for each of four (4) solicitation phone calls.

## COUNT FOUR:

### Violations of Texas Business and Commerce Code, § 305.053

78. Plaintiff realleges and incorporates paragraphs 1-63 as it fully set forth herein.

79. Defendants placed in a 12-month period more than one telemarketing telephone calls to Plaintiff's telephone number.

80. Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

81. Plaintiff is entitled to the greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b).

82. Plaintiff is entitled to the greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nubia Herrera prays for judgment against the Defendant as follows:

      A.      An order declaring that Defendants' actions, as set out above, violate the TCPA and the Texas Business and Commerce Code because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

      B.      An award of statutory damages under the Telephone Consumer Protection Act;

      C.      An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101;

      D.      An award of statutory damages under the Texas Business and Commerce Code;

      E.      An award of treble damages;

      F.      An award of reasonable attorneys' fees and costs, including the costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d); and

      G.      All other relief, in law and in equity, to which Plaintiff may be entitled.

June 11, 2024,          Respectfully submitted,

Nubia Herrera
Plaintiff, Pro Se
7519 N Loop Drive
El Paso, TX 79915
915-888-0489
Nubia88.nh@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

June 11, 2024,                    Respectfully submitted,


Nubia Herrera
Plaintiff, Pro Se
7519 N Loop Drive
El Paso, TX 79915
915-888-0489
Nubia88.nh@gmail.com

15